STATE of Wisconsin, Plaintiff-Respondent,

v.

James W. DARBY, Defendant-Appellant.†

Court of Appeals

*No. 2008AP935–CR. Submitted on briefs January 21, 2009.*
*—Decided March 19, 2009.*

2009 WI App 50

(Also reported in 766 N.W.2d 770.)

† Petition to review filed.

478

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert M. Goode* of *Goode Law Office*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, asst. attorney general, and *J.B. Van Hollen*, attorney general.

Before Vergeront, Lundsten and Bridge, JJ.

¶ 1. VERGERONT, J. James Darby appeals the judgment of conviction for aggravated battery and the order denying postconviction relief, presenting two issues for our review. The first issue is whether Darby was denied his constitutional right to represent himself at trial, which requires us to decide as a threshold matter whether Darby is correct that the circuit court had an obligation to advise him of his right to self-representation. This is a question of first impression in Wisconsin. Consistent with case law from other jurisdictions, we conclude that a defendant must clearly and unequivocally declare a desire to represent himself or herself in order to invoke that right and the circuit court has no obligation to advise a defendant of that right prior to a clear and unequivocal declaration. Because Darby did not make a clear and unequivocal declaration, he was not denied the right to self-representation.

¶ 2. The second issue is whether the circuit court erroneously exercised its discretion in denying Darby's request for a different appointed attorney. We conclude the court did not erroneously exercise its discretion.

¶ 3. Accordingly, we affirm the judgment of conviction and the order denying postconviction relief.

### BACKGROUND

¶ 4. Darby was charged with one count of aggravated battery while using a dangerous weapon, as a repeater, in violation of WIS. STAT. §§ 940.19(5), 939.63(1)(b) and 939.62(1)(c) (2007–08).[1] The complaint alleged that Darby beat his wife with a pipe, causing

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

lacerations to both legs, injury to her right hand, fractures in her left ankle, and injury to her left hand that required seven stitches.

¶ 5. The court appointed an attorney to represent Darby in April 2006, shortly after Darby's first appointed counsel withdrew because of a conflict. A jury trial was scheduled to begin on September 11, 2006. On September 6, 2006, the circuit court received a letter from Darby, dated September 5, which stated in relevant part:

> I would like to bring to your attention on 4–23–06 [my attorney] was appointed to properly represent me in my pending case . . . . I would like to point out that I have only had three or four jail visit[s] with [my attorney]. I have not ever had the opportunity to talk with [my attorney] over the phone . . . . I also made a request for certain legal documents. I have not received my discovery information material at this time. I would very much appreciate if I could please have an atty. for legal assistance and the opportunity to prepar[e] my case . . . properly in my [behalf] for the court in this matter . . . .

(Capitalization removed.)

¶ 6. On the morning of jury selection, Darby reiterated his concerns about lack of contact with his attorney, telling the court he wanted to dismiss his attorney because he had generally "shown very little interest in my case." Darby also renewed his complaint that he had not received documents which he wanted "so I can prepare myself for my jury trial." In addition, Darby stated:

> I asked [my attorney], I wanted to know my legal— what legal defenses he was using, you know, as far as my case, you know, as far as representing me, you know, in my legal rights, and he said he can't tell me, you

know, his legal defense in regards to representing me. So I said, well, I feel very uncomfortable with him because he have [sic] shown very little interest in my case.

¶ 7.   When the court asked him what he thought his legal defense was, Darby replied that there were "case issues" that he wanted his attorney to help him prepare and his attorney had not done so. However, Darby was unable to tell the court what the cases said that he thought helped him. During this exchange, Darby's attorney explained that Darby wanted to pursue a theory of self-defense that he, the attorney, did not think was viable. Darby's attorney assured the court that he was prepared to go to trial. The court stated that it would give a self-defense instruction if the evidence presented supported one, but, the court concluded, there was no reason to dismiss the attorney at such a late date.

¶ 8.   The trial proceeded with Darby's current attorney representing him. The jury found Darby guilty of aggravated battery while using a dangerous weapon.

¶ 9.   Darby filed a postconviction motion contending that the circuit court violated his Sixth Amendment rights by failing to advise him of his right to self-representation and, alternatively, by denying his requests for another attorney. The circuit court denied the motion on both grounds. The court determined that Darby's comments about his attorney were vague and general and provided no basis upon which to find either that Darby wanted to proceed pro se or that he was entitled to another attorney. The circuit court found that Darby's statements at most indicated a desire either to have his current attorney present the defense he wanted or to get a different attorney who would present such a defense.

## DISCUSSION

¶ 10. On appeal, Darby renews his contention that the circuit court denied him his rights under the Sixth Amendment by failing to advise him of his right to self-representation and, alternatively, by denying his requests for new counsel.

### I. Right to Self-Representation

¶ 11. The Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution guarantee a criminal defendant both the right to assistance of counsel at trial and the right to self-representation at trial. *State v. Klessig*, 211 Wis. 2d 194, 201–02, 203, 564 N.W.2d 716 (1997).

¶ 12. Darby contends that, once he made the court aware of his "irreconcilable differences" with his attorney, this "perfected" his right to self-representation and, at that point, the circuit court had an affirmative duty to give him a choice between current counsel and self-representation. Because the court did not do so, Darby contends, his constitutional right to self-representation was violated. The State responds that, in order to invoke the right to self-representation, the defendant must clearly and unequivocally inform the court that he or she wants to proceed pro se, and the court has no duty to advise a defendant of that option prior to a defendant doing this.[2]

---

[2] The State also asserts that a defendant's declaration that he or she wants to proceed pro se must be timely and Darby's was not. It is unnecessary to address this issue because we conclude there was not a clear and unequivocal declaration.

·¶ 13.   Whether Darby's constitutional right to self-representation was violated presents a question of law, which we review de novo. *See id.* at 204.

¶ 14.   There appears to be no Wisconsin case that defines what a defendant must do to invoke the right to self-representation or that addresses whether the circuit court must advise a defendant of that right. In *Laster v. State,* 60 Wis. 2d 525, 539, 211 N.W.2d 13 (1973), the court rejected the defendant's contention that his "outburst" in the circuit court claiming that his trial counsel was "railroad[ing]" him was a request to proceed pro se. The court stated:   "If the defendant desires to proceed pro se he must so indicate it." *Id.* However, the court did not elaborate on what constitutes a sufficient indication, nor was the court presented with the argument Darby makes here—that the circuit court has a duty to advise a defendant of the right to proceed pro se once the defendant expresses differences with trial counsel that the defendant considers to be irreconcilable.

¶ 15.   In order to resolve the issue we first examine the general framework within which the right to self-representation exists and then consider cases from other jurisdictions that have addressed the question of what the defendant must do to invoke the right to self-representation and whether the circuit court has a duty to advise a defendant of that right.

¶ 16.   *Faretta v. California,* 422 U.S. 806, 819 (1975), established that, while the Sixth Amendment does not explicitly guarantee the right to self-representation, that right is necessarily implied by the structure of the Amendment."[3] The Court recognized

---

[3] In contrast to the Sixth Amendment, Article I, Section 7 of the Wisconsin Constitution explicitly gives a criminal defendant

that this right seemed to "cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel," and the basic principle in these decisions that the assistance of a lawyer is essential to assure a defendant a fair trial. *Id.* at 832–33. However, the Court stated, respect for the individual supported honoring a defendant's choice to proceed without counsel, even if that choice is detrimental to the defendant. *Id.* at 834. *See also Martinez v. Court of Appeal of California*, 528 U.S. 152, 160 (2000) ("[T]he *Faretta* majority found that the right to self-representation at trial was grounded in part in a respect for individual autonomy.").

¶ 17.   Because self-representation involves forgoing the right to representation of counsel and because the right to counsel is considered so fundamental to a fair trial, a prerequisite to proceeding pro se is a knowing, intelligent, and voluntary waiver of the right to counsel. *State v. Pickens*, 96 Wis. 2d 549, 555, 292 N.W.2d 601 (1980), *overruled on other grounds by Klessig*, 211 Wis. 2d at 206. Indeed, the right to counsel at trial is of such fundamental importance that it attaches automatically at the commencement of adversary proceedings against a defendant, *State v. Dagnall*, 2000 WI 82, ¶ 30, 236 Wis. 2d 339, 612 N.W.2d 680; non-waiver is presumed and waiver must be affirmatively shown to be knowing, intelligent, and voluntary in order for it to be valid. *Pickens*, 96 Wis. 2d at 555. In addition to

the right to conduct his or her own defense. *State v. Klessig*, 211 Wis. 2d 194, 203, 564 N.W.2d 716 (1997). However, the right to self-representation, like the right to assistance of counsel, is identical under the Wisconsin and the United States Constitutions. *Id.*

insuring that a defendant has knowingly, intelligently, and voluntarily waived the right to counsel before permitting a defendant to proceed pro se, the court must determine that the defendant is competent to proceed pro se. *Klessig*, 211 Wis. 2d at 203.

¶ 18. Although *Faretta* establishes the right to self-representation at trial, the Court was not called upon in that case to resolve a dispute over how that right was invoked or whether the trial court had a duty to advise the defendant of that right. The defendant in *Faretta*, the Court stated, had "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." 422 U.S. at 835. Because of that and because the record showed the defendant was voluntarily exercising his informed free will and was competent, the Court held that the trial court erred in requiring the defendant to accept appointed counsel. *Id.* at 835, 836. Thus, although the Court in *Faretta* approved a clear and unequivocal request to proceed pro se as triggering the trial court's obligation to insure a valid waiver of the right to counsel and competency to proceed pro se, the Court did not expressly hold that *only* a clear and unequivocal declaration of the desire to proceed pro se triggers these trial court obligations.

¶ 19. However, as the State points out, numerous cases in other jurisdictions decided since *Faretta* have expressly held that a defendant must clearly and unequivocally make such a declaration in order to invoke the right to self-representation. Indeed, each of the twelve regional federal courts of appeal have so held. *United States v. Cromer*, 389 F.3d 662, 682–83 (6th Cir. 2004); *United States v. Peppers*, 302 F.3d 120, 132 (3d Cir. 2002); *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000) (per curiam); *Fields v. Murray*, 49 F.3d 1024, 1029

(4th Cir. 1995); *Hamilton v. Groose*, 28 F.3d 859, 862–63 (8th Cir. 1994); *United States v. Benefield*, 942 F.2d 60, 65 (1st Cir. 1991); *United States v. Jones*, 938 F.2d 737, 742 (7th Cir. 1991); *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989); *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir. 1986); *Raulerson v. Wainwright*, 732 F.2d 803, 808 (11th Cir. 1984); *United States v. Weisz*, 718 F.2d 413, 425 (D.C. Cir. 1983); *United States v. Bennett*, 539 F.2d 45, 50 (10th Cir. 1976). In addition, a number of state courts have arrived at the same conclusion. *See, e.g., Johnson v. State*, 188 P.3d 700, 703–04 (Alaska Ct. App. 2008); *State v. Henry*, 944 P.2d 57, 63 (Ariz. 1997); *People v. Salazar*, 141 Cal. Rptr. 753, 761 (Cal. Ct. App. 1977); *State v. Carter*, 513 A.2d 47, 50 (Conn. 1986), and cases cited therein; *State v. Craft*, 685 So. 2d 1292, 1295 (Fla. 1996); *State v. Lippert*, 181 P.3d 512, 523 (Idaho Ct. App. 2007); *Anderson v. State*, 370 N.E.2d 318, 320 (Ind. 1977); *People v. McIntyre* 324 N.E.2d 322, 327, (N.Y. 1974); *State v. Hutchins*, 279 S.E.2d 788, 799 (N.C. 1981); *State v. Garcia*, 600 P.2d 1010, 1015 (Wash. 1979).

¶ 20.    These cases rely on two primary rationales, which are succinctly explained in *Adams*, 875 F.2d at 1444:

> First, [the requirement of a clear and unequivocal declaration] acts as a backstop for the defendant's right to counsel, by ensuring that the defendant does not inadvertently waive that right through occasional musings on the benefits of self-representation. Because a defendant normally gives up more than he gains when he elects self-representation, we must be reasonably certain that he in fact wishes to represent himself.
>
> [Second, the requirement] also serves an institutional purpose:   It prevents a defendant from taking advantage of the mutual exclusivity of the rights to counsel

and self-representation. A defendant who vacillates at trial between wishing to be represented by counsel and wishing to represent himself could place the trial court in a difficult position: If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself; if the court permits self-representation, the defendant could claim he had been denied the right to counsel. The requirement of unequivocality resolves this dilemma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel.

(Citations omitted.)

¶ 21.  The related question of whether a trial court has an obligation to inform a defendant of the right to self-representation in the absence of a clear and equivocal declaration by the defendant appears to have been uniformly answered in the negative by those courts that have addressed this question. *See, e.g., Munkus v. Furlong,* 170 F.3d 980, 983 (10th Cir. 1999); *United States v. Martin,* 25 F.3d 293, 295 (6th Cir. 1994); *Johnson,* 188 P.3d at 704; *Salazar,* 141 Cal. Rptr. at 761; *Craft,* 685 So. 2d at 1295; *Lippert,* 181 P.3d at 523; *Russell v. State,* 383 N.E.2d 309, 313 (Ind. 1978); *Commonwealth v. Myers,* 748 N.E.2d 471, 476 (Mass. App. Ct. 2001); *McIntyre,* 324 N.E.2d at 327; *Hutchins,* 279 S.E.2d at 799; *Garcia,* 600 P.2d at 1014. Several of these cases specifically hold that complaints about a defendant's current attorney do not trigger any obligation of the court to advise the defendant of the right to self-representation as an alternative. *See Martin,* 25 F.3d at 296; *Salazar,* 141 Cal. Rptr. at 761–62; *Myers,* 748 N.E.2d at 476; *Hutchins,* 279 S.E.2d at 799.

¶ 22. The reasoning relied on in these cases flows from the fact that the right to self-representation is grounded in consideration for an individual's free choice rather than in fair trial concerns. *See, e.g., Munkus,* 170 F.3d at 983; *Martin,* 25 F.3d at 295. Indeed, the right to self-representation may actually hinder the interests in a fair trial. *Munkus,* 170 F.3d at 983; *Russell,* 383 N.E.2d at 313. Since the requirement of a knowing and intelligent waiver of a constitutional right has generally been applied only to rights that preserve a fair trial, this requirement does not apply to the right to self-representation; the trial court therefore does not have a duty to advise the defendant of this right prior to the defendant's invocation of this right. *Id.; Martin,* 25 F.3d at 295.

¶ 23. Against this wealth of authority, Darby cites only one case in support of his position: *United States v. Oreye,* 263 F.3d 669 (7th Cir. 2001). We do not agree that *Oreye* holds, as Darby suggests, that, when a defendant requests that new counsel be appointed, the trial court has an affirmative duty to give the defendant a choice between current counsel and self-representation. It is true that, when the defendant in *Oreye* refused to cooperate with his substituted appointed counsel, the trial court told the defendant he would either have to continue with that attorney, find another attorney at his expense, or proceed pro se with his current attorney as standby counsel. *Id.* at 670. However, the issue on appeal was whether the defendant, who in the end had proceeded pro se with standby counsel, had made an effective waiver of the right to assistance of counsel. *Id.* at 671. The Seventh Circuit held the defendant waived the right to assistance of counsel through his conduct and discussed his right to self-representation only in the

493

context of explaining why the trial court had acted properly in requiring him to proceed pro se, with standby counsel, in the circumstances of that case. *Id.* at 670–71. Thus, while the trial court in *Oreye* may have told the defendant about his right to represent himself even though he did not make a clear and equivocal declaration that he wanted to do so, nothing in the Seventh Circuit's opinion suggests that a trial court is obligated to do that.

¶ 24.   We conclude that the reasons for requiring a defendant to invoke the right to self-representation by a clear and unequivocal declaration, as articulated in *Adams, see supra* ¶ 20, are sound. We are also persuaded by the reasoning of *Martin, Munkus,* and the other courts that have held that a trial court has no duty to advise a defendant of the right to self-representation prior to an invocation of that right by a clear and unequivocal declaration. *See supra* ¶¶ 21–22. Accordingly, we hold that there could be no violation of Darby's right to self-representation unless he clearly and unequivocally declared he wanted to represent himself, and, if he did not invoke this right in this manner, the circuit court had no obligation to advise him of this right.

¶ 25.   Turning to the facts of this case, we conclude Darby did not make a clear and unequivocal declaration that he wanted to represent himself. A couple of phrases in isolation might be interpreted to mean that he wanted to represent himself, perhaps with the assistance of standby counsel, such as the sentence in his letter that "I would very much appreciate if I could please have an atty. for legal assistance and the opportunity to prepar[e] my case . . . properly in my [behalf] for the court on this matter." The same might be said of his statement to the court that "*I think I*

*should have the legal right to properly prepare my case for the courts and in my behalf,* and so far at this point, this is the fifth contact I have had with this attorney." (Emphasis added.) However, these statements do not constitute a clear and unequivocal declaration that he wished to represent himself, with or without the assistance of standby counsel. Given that the focus of his communication with the court was dissatisfaction with his current attorney, the above cited statements might also mean that he wanted another attorney to represent him who would be more attentive and do what he (Darby) wanted, unlike his current attorney.

¶ 26. We agree with other courts that have concluded that a defendant's expressions of dissatisfaction with his or her current attorney or a request for another attorney do not constitute a clear and unequivocal declaration that the defendant wants to proceed pro se. *See, e.g., State v. Hanson,* 674 P.2d 850, 853–54 (Ariz. Ct. App. 1983); *Salazar,* 141 Cal. Rptr. at 761; *Anderson,* 370 N.E.2d at 320; *Hutchins,* 279 S.E.2d at 799; *Garcia,* 600 P.2d at 1015.

¶ 27. Because Darby failed to make a clear and unequivocal declaration that he wanted to represent himself, there was no violation of his right to self-representation.

II. Substitution of Counsel

■■■■■■

¶ 28. Indigent defendants are guaranteed the right to appointed counsel. U.S. Const. amends. VI, XIV, § 1; Wis. Const. art. I, §7;[4] *State v. Scarbrough,* 55 Wis. 2d 181, 186, 197 N.W.2d 790 (1972). However, this

---

[4] They are also guaranteed this right by Wis. Stat. § 970.02(1)(b).

guarantee does not include the right to the particular attorney of the defendant's choosing. *Id.* The decision whether counsel should be relieved and a new attorney appointed is a matter of the circuit court's discretion. *Id.* We uphold a discretionary decision if the circuit court logically interpreted the facts, applied the proper legal standard to the relevant facts, and used a rational process to reach a reasonable conclusion. *State v. Wanta,* 224 Wis. 2d 679, 689, 592 N.W.2d 645 (Ct. App. 1999).

**[16–18]**

¶ 29. In determining whether the circuit court has erroneously exercised its discretion in denying a request for substitution of counsel, we consider these factors:

> (1) the adequacy of the court's inquiry into a defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between a defendant and his attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.

*Id.* at 702–03. With respect to the third consideration, the defendant must show good cause for substitution of appointed counsel, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which could lead to an unjust verdict. *Id.* at 703. "Mere disagreement over trial strategy does not constitute good cause to require the court to permit an appointed attorney to withdraw." *Id.*

■■

¶ 30. In addition, when the substitution of counsel would require a continuance of the trial, the circuit court must "balance a defendant's constitutional right to counsel of choice [or desire for new appointed counsel] against the societal interest in prompt and efficient

administration of justice." *Id.* Among the factors the court may consider in balancing these interests are:

> [T]he length of delay requested; whether there is competent counsel presently available to try the case; whether other continuances have been requested and received by the defendant; the convenience or inconvenience to the parties, witnesses and the court; whether the delay seems to be for legitimate reasons or whether its purpose is dilatory.

*Id.* at 703–04.

¶ 31. Darby argues that the circuit court erroneously exercised its discretion in not appointing new counsel for him because his statements established irreconcilable differences and a communication breakdown with his attorney. We agree with the State that the circuit court properly exercised its discretion.

¶ 32. Darby's initial request came to the court only seven days before trial, and, therefore, substitution of counsel in this case would have required a continuance. On the morning of jury selection, the circuit court made an inquiry of both Darby and his attorney about why Darby was requesting new counsel. His attorney stated that he was prepared to try the case, had read the police reports and investigated possible defenses, including self-defense. When the court gave Darby the chance to explain why he wanted new counsel, Darby stated that he had only had five jail visits with the attorney and no phone contact, that he had not received the discovery material he requested, that the attorney had not told him what his legal defense would be, and that his attorney had not followed up on "case issues" that Darby wanted him to pursue.

¶ 33. The court asked Darby what specific discovery material he had requested and not received. Darby replied: "I requested I get my Criminal Complaint, my

police report, my discovery, and . . . my criminal history . . . . Only thing I have is my Criminal Complaint and police report. The other stuff I don't have." The court asked Darby what he meant by "case issues" and Darby replied, "I've been ordering cases . . . law statutes based around the charges that I've been charged with . . . ." When the court asked him what the cases said that he thought helped him, Darby replied, "I don't have them right out, but I have to cite out . . . certain issues out of these cases . . . . There's a number of them, and I have to cite these cases and stuff." Although Darby was not specific about the defenses and issues he claimed were not being pursued by his counsel, the court received the explanation from Darby's attorney that Darby wanted to pursue a theory of self-defense, which he, the attorney, did not think was viable and he explained why.

¶ 34. This inquiry by the court was adequate to inform the court of the nature of Darby's complaints insofar as Darby was able or willing to go beyond generalizations. Based on this inquiry, the court could reasonably conclude, as it did, that there had been sufficient contact between Darby and his lawyer. The court could also reasonably conclude, as it did, that Darby's not having received his criminal history was not significant because Darby presumably knew his own criminal history. Darby did not specify any other material he had requested of his attorney and not received.

¶ 35. Finally, the court could reasonably conclude that the core of Darby's complaint on the defenses and issues not being pursued by his attorney was a disagreement over whether a self-defense theory was a good trial strategy.[5]

---

[5] Portions of Darby's argument suggest that he may be criticizing his attorney's performance at trial because his attor-

¶ 36.   Considering the vagueness of Darby's complaints, even after the court attempted to elicit more detail, and the information counsel provided, the court could reasonably conclude that the disagreement about the self-defense theory was not the type of "complete breakdown in communication or an irreconcilable conflict which leads to an . . . unjust verdict." *Id.* at 703. Considering also the timing of this request and the fact Darby's attorney was prepared to try the case, the court could reasonably conclude that the interest in a prompt, efficient trial process outweighed the defendant's interest in having a different attorney appointed.

## CONCLUSION

¶ 37.   Darby's right to self-representation was not violated because Darby failed to invoke that right by making a clear and unequivocal declaration that he wanted to represent himself. In addition, the circuit court properly exercised its discretion in denying his request for another appointed attorney.

*By the Court.*—Judgment and order affirmed.

---

ney did not present an affirmative defense of self-defense based on evidence of "battered spouse syndrome." However, Darby does not develop an argument that he received ineffective assistance of counsel. We therefore do not address that issue.