KESSLER, P.J.[1]
¶1 Sandra Solomon appeals a judgment of conviction, entered upon a guilty plea, of one count of misdemeanor criminal damage to property with a domestic abuse assessment. Solomon appeals the postconviction order denying her motion to withdraw her guilty plea. We affirm.
BACKGROUND
¶2 On March 25, 2016, Solomon was charged with one count of criminal damage to property and one count of disorderly conduct. The domestic abuse assessment attached to both charges. According to the criminal complaint, on March 16, 2016, V.G.-J. called West Allis police to report that she witnessed her former girlfriend, Solomon, pick up a rock and throw it through the front windshield of V.G.-J.'s car. V.G.-J. told police that she and Solomon lived together for approximately one year and were in a romantic relationship. Approximately one month before the incident, V.G.-J. broke up with Solomon and moved in with her boyfriend. V.G.-J. told police that in the days prior to the incident, Solomon called, texted and emailed V.G.-J. hundreds of times. Some of the emails threatened V.G.-J. with bodily harm. On the day of the incident, Solomon texted V.G.-J. that she was coming to V.G.-J.'s home. V.G.-J. saw Solomon through the window of her home and observed Solomon pick up a rock and throw it through V.G.-J.'s windshield.
¶3 At the final pretrial conference, Solomon told the circuit court that she was prepared to plead guilty to the disorderly conduct charge. However, when the circuit court informed Solomon of the firearm restriction, Solomon stated, "that doesn't sit well with me." The court informed Solomon that she was not obligated to plead guilty and could proceed to trial, to which Solomon responded, "I can't afford an attorney." The court advised Solomon to speak with her counsel and concluded proceedings for the day.
¶4 At the motion hearing which followed, Solomon's counsel, Mark Schoenfeldt, moved to withdraw as counsel, telling the circuit court that he had not been paid and did not wish to proceed as Solomon's counsel. The following exchange ensued between the court and Solomon:
[Solomon]: I agree with what he said also, but as far as this case, but I actually have a small claims with [V.G.-J.] also....
THE COURT: I want to hear about you and your attorney.
[Solomon]: It has to with some of that. We're having a conflict on how we should approach this whole thing.
THE COURT: All right. I'm going to have you go over to the public defender's office right now and see if you qualify....
Later that day, the circuit court recalled the case:
THE COURT: All right. Ms. Solomon, you went to the public defender's office and you do not qualify.
....
[Solomon]: I wanted to say as far as the public defender's lawyers, it seems like I'm better off going at this by myself. I'm in foreclosure with my house. I can't afford an attorney. I might as well pay my mortgage to catch back up and keep my home.
....
THE COURT: And you tried to privately retain Attorney Schoenfeldt, but you weren't able to afford him?
[Solomon]: Initially, I hired him because there was a warrant for my arrest. I wanted him to help me surrender myself. I didn't know that I had to keep him the duration of the time.
THE COURT: All right. What I'm going to do, if you would like, I will appoint an attorney to represent you, but here's the caveat, you're going [to] have to pay Milwaukee County back for that representation when the case is closed at the rate of $50 a month. Is that something you want to do?
[Solomon]: I guess I'm trying to express to you I don't know what's the difference between this attorney I had here or the one you're going to appoint me.
THE COURT: Well, the one you have here doesn't want to be your attorney anymore because you haven't paid him.
[Solomon]: And we had some other conflicts also.
THE COURT: I can't give you any better of an offer than that, ma'am.
[Solomon]: I guess I didn't want an attorney on record .... Seems like I need to go back through the DA office myself to explain some other things to do with this case right here.
THE COURT: We have this case here now.
....
THE COURT: Here's the situation, you're looking at up to a year in jail. You're looking at up to $1,100 in fines. You are looking at many, many consequences. Handling this on your own is not smart. Would you like me to appoint an attorney for you? Yes or no?
[Solomon]: No.
THE COURT: All right. Call Attorney Schoenfeldt. Tell him I'm not letting him off the case.
¶5 The matter proceeded and the parties appeared for a jury trial. Schoenfeldt appeared with Solomon, however, the following exchange ensued:
[Schoenfeldt]: Attorney Mark Schoenfeldt in court.
THE COURT: With your client who is still your client.
....
[Schoenfeldt]: -- I have to disagree with that because I was taken off this case. I realize nothing has been filed in court to have me replaced in this case. But I had probably six discussions with Paul Ksicinski, the attorney that got retained on this case about two-and-a-half to three weeks ago; said he had been retained by Ms. Solomon, who is sitting next to me. And I consider her not my client any longer because someone else has been hired to take over this case.
THE COURT: ... [N]obody advised the Court of this. This is the last case ready to go this morning. My understanding is the State is prepared to go. Attorney Ksicinski has advised this Court he has no information about this case. He hasn't filed a notice of retainer and he has a family emergency this morning. He asked if the matter can be called at 1:30. At 1:30, we will be trying this case.
[Schoenfeldt]: I have a family emergency at 1:30.
THE COURT: At 1:30 you will be here trying this case with him. This is ridiculous.
[Schoenfeldt]: ... [T]his is not the way practice should be.
THE COURT: Right. One of you needed to make sure and follow up that this Court had information that Attorney Ksicinski was going to be trying the case this afternoon....
¶6 Later that afternoon both Attorneys Schoenfeldt and Ksicinski appeared with Solomon. Ksicinski explained that Solomon retained his services the previous week. He told the court that he reviewed discovery, was prepared to proceed with trial, and had four motions in limine . The court relieved Schoenfeldt of his duties and adjourned the matter to give Ksicinski time to address his motions in limine with the State. When the case was recalled, the court addressed the motions in limine and Ksicinski told the court that he had not received an audio recording of a 911 call. The court paused proceedings to allow Ksicinski to hear the 911 call.
¶7 When the matter resumed, Ksicinski told the circuit court that the parties reached a resolution in which Solomon would plead guilty to criminal damage to property and the disorderly conduct charge would be dismissed and read in. Ksicinski then explained the resolution to Solomon on the record:
The offer is plead to Count 1, criminal damage to property, dismiss but read in Count 2, the disorderly conduct. That means the judge can consider Count 2 in formulating the sentence for Count 1. The offer there is six months imposed and stayed. That means you do not do jail time unless -- if your probation is revoked; put you on probation instead for 18 months probation, mental health evaluation, batterer's intervention, full-time work or school, no contact with the victim, costs and surcharges, restitution in the amount of $282.11. And the other thing I didn't mention before, of course, is the judge doesn't have to follow this. The judge is free to sentence anywhere up to the maximum.
The circuit court asked Solomon "is that what you want to do?" Solomon responded in the affirmative.
¶8 The court conducted a plea colloquy with Solomon, in which it repeated the parties' resolution and confirmed Solomon's understanding. Ksicinski also stipulated that the criminal complaint could be used as a factual basis for the plea. Solomon told the court that she was satisfied with Ksicinski's representation and Ksicinski told the court that he believed Solomon's plea to be free and voluntary. The following exchange then ensued between the court and Ksicinski:
[Ksicinski]: Judge, I'd just like to point out that in the plea questionnaire waiver of rights form I had her initial each line. Given that, as the Court indicated, we were prepared to go through with the jury trial.... I had her initial each one of the lines to make sure she understood each one of the lines as I went through there. She indicated to me she did....
....
It should also be clear. Judge, as I indicated, I believe I am prepared for trial. I did receive the discovery today. But in all candor, it was relatively simple....
THE COURT: And I think you've tried many, many cases.
[Ksicinski]: Thank you. Judge. And it was a one -- it was, essentially, really, a one-witness case. I know the State listed three or mentioned three, but it's really the alleged victim is the key witness. I don't think there was a lot of preparation that could have been done outside of even what was done today. But I've discussed this with Miss Solomon. I believe she understands our discussion. And she also pointed out to me -- I believe she has an associate's degree, as well as a high school education. I believe she is giving you a free, voluntary, and intelligent plea.
¶9 Solomon told the court that she agreed with Ksicinski's statement. The court then raised the issue of domestic abuse assessments and asked if Solomon understood, stating "this is a domestic abuse case, so there is going to be a domestic abuse assessment that you're required to pay that is 100 dollars. And, further, you'll never be able to possess a firearm the remainder of your lifetime. Do you understand that?" Solomon answered "yes." Upon completion of the guilty plea colloquy, the court found Solomon guilty of criminal damage to property and entered a judgment of conviction. With consent of both parties, the court then proceeded to sentencing.
¶10 After hearing a statement from the victim, the court sentenced Solomon to nine months in the House of Correction, stayed for eighteen months of probation with conditions to include sixty days of imposed and stayed condition time to be used at her probation agent's discretion along with an additional sixty days of condition term to be served up front as condition time. The court ordered that Solomon pay $282.11 in restitution to V.G.-J. The court also ordered that Solomon "pay the [domestic violence] surcharge along with the DNA surcharge."
Postconviction Motion
¶11 Solomon filed a postconviction motion seeking to withdraw her guilty plea and strike the domestic abuse assessment, arguing that her plea was not entered voluntarily, "and there is not an adequate factual basis supporting the domestic abuse modifier." Specifically, Solomon argued that she "had been denied the opportunity to represent herself; the circuit court was insistent that her case would be tried that day despite serious questions about who was representing her; her newly retained attorney had only just received discovery that day, had not filed motions in limine , was not aware of the existence of a 911 call, and was not aware of an ownership issue relevant to [her] potential defense." (Italics added.) In essence, Solomon argued that her plea was coerced because her counsel was not prepared to go to trial. Solomon also argued that the record "fails to present a sufficient basis for imposing the domestic abuse modifier."
¶12 The postconviction court denied the motion, noting that Solomon did not unequivocally invoke her right to self-representation and that her arguments about counsel's level of preparedness belied the record. The court also found that the domestic abuse modifier appropriately applied to Solomon's case. This appeal follows.
DISCUSSION
¶13 On appeal, Solomon argues that her plea was not knowing, voluntary or intelligent because "her choice to plead was legally coerced." Specifically, she contends "she was denied the opportunity to represent herself; the circuit court was insistent that her case would be tried [the date of the scheduled trial] despite serious questions about who was representing her; and her newly-retained attorney had only just received discovery that day, had not filed motions in limine , was not aware of the existence of a 911 call, and was not aware of an ownership issue relevant to her potential defense." (Italics added.) She also argues that the domestic abuse modifier should be stricken from the judgment of conviction because there was not a sufficient factual basis for the modifier.
Plea Withdrawal
¶14 "A defendant seeking to withdraw a plea of guilty or no contest before sentencing must show that there is a 'fair and just reason,' for allowing him or her to withdraw the plea." State v. Kivioja , 225 Wis. 2d 271, 283, 592 N.W.2d 220 (1999) (citation omitted). If a defendant makes this necessary showing, the circuit court "should permit the defendant to withdraw his or her plea unless the prosecution has been substantially prejudiced." Id. at 283-84. One "fair and just reason" for plea withdrawal that courts have recognized is "coercion on the part of trial counsel," see State v. Shimek , 230 Wis. 2d 730, 739, 601 N.W.2d 865 (Ct. App. 1999), which is the basis Solomon asserted in her postconviction motion.
¶15 A defendant who seeks to withdraw a guilty plea is not automatically entitled to an evidentiary hearing. A postconviction court must have an evidentiary hearing on the facts alleged in a postconviction motion only when that motion alleges sufficient facts that, if true, would establish that the defendant is entitled to relief. See State v. Allen , 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433. If a defendant does not allege sufficient facts, presents only conclusory allegations, or if the record supports that a defendant is not entitled to relief, a postconviction court may exercise its legal discretion to deny the motion without a hearing. See Nelson v. State , 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972).
¶16 We agree with the postconviction court that Solomon has failed to allege facts sufficient to suggest that she was coerced into entering her guilty plea. First, the circuit court conducted a thorough colloquy with Solomon in which the court confirmed that Solomon understood the implications of pleading guilty. Second, the record belies Solomon's argument that her counsel was not prepared for trial. Indeed, counsel's preparation was addressed by the circuit court prior to accepting Solomon's guilty plea. On the day of the scheduled trial, Ksicinski told the court that he was prepared to raise four motions in limine and that he had reviewed discovery in the case. The court also gave Ksicinski time to listen to the 911 call Solomon now complains about. Ksicinski told the court that the case was "simple," involved only one witness, and that he was prepared to try the case. When the court asked Solomon whether she agreed with Ksicinski's assessment of the case, Solomon responded in the affirmative. Solomon cannot now argue that she was coerced into pleading guilty because Ksicinski was ill-prepared for trial.
¶17 As to Solomon's contention that the circuit court prohibited her from representing herself, we conclude that her argument is not supported by law. To invoke the right to self-representation, a defendant must clearly and unequivocally demand the right to proceed pro se . State v. Darby , 2009 WI App 50, ¶ 24, 317 Wis. 2d 478, 766 N.W.2d 770. Only a clear and unequivocal demand triggers the circuit court's obligation to ensure a valid waiver of the right to counsel and competency to proceed pro se . Id. , ¶¶ 18-19, 24. Solomon did not clearly and unequivocally invoke her right to represent herself. Instead, she expressed concern about the cost of a lawyer and suggested that representing herself would be more cost-effective. All of Solomon's statements concerning self-representation were, as the postconviction court stated, "non-committal phrases and amounted to nothing more than 'musings on the benefits of self-representation.' " See Darby , 317 Wis. 2d 478, ¶ 20. The postconviction court properly denied Solomon's motion to withdraw her guilty plea.
Domestic Abuse Assessment
¶18 Solomon contends that the domestic abuse assessment should be stricken from her conviction because the State did not charge her under WIS. STAT . § 968.075 -the domestic abuse statute. In essence, she argues that her offense does not qualify as an act of domestic abuse. We disagree.
¶19 WISCONSIN STAT. § 973.055(1), the statute governing domestic abuse surcharges, states:
If a court imposes a sentence on an adult person or places an adult person on probation, regardless of whether any fine is imposed, the court shall impose a domestic abuse surcharge under ch. 814 of $100 for each offense if:
(a)1. The court convicts the person of a violation of a crime specified in s. 940.01, 940.02, 940.03, 940.05, 940.06, 940.19, 940.20(1m), 940.201, 940.21, 940.225, 940.23, 940.235, 940.285, 940.30, 940.305, 940.31, 940.32, 940.42, 940.43, 940.44, 940.45, 940.48, 941.20, 941.30, 943.01, 943.011, 943.14, 943.15, 946.49, 947.01(1), 947.012 or 947.0125 or of a municipal ordinance conforming to s. 940.201, 941.20, 941.30, 943.01 , 943.011, 943.14, 943.15, 946.49, 947.01(1), 947.012 or 947.0125; and
2. The court finds that the conduct constituting the violation under subd. 1 involved an act by the adult person against his or her spouse or former spouse, against an adult with whom the adult person resides or formerly resided or against an adult with whom the adult person has created a child....
(Emphasis added.)
¶20 The plain language of the statute has two requirements: (1) a conviction under one of the listed statutes, and (2) a finding that the conduct was committed against a person identified by the statute. Both of those elements are present here. Solomon was convicted under WIS. STAT. § 943.01 and her conduct was committed against an adult with whom she formerly resided.
¶21 Moreover, we agree with the postconviction court that even had the case been charged under WIS. STAT . § 968.075, which requires a finding of an action that satisfies the definition supplied by that statute, the record still would support such a finding. The postconviction court cited to the victim's statement made at sentencing which described a "long pattern of stalking and emotional abuse that preceded the offenses." The court found that given the "context, there was more than a sufficient factual basis for the court to find Solomon's actions ... may have caused the victim to reasonably fear imminent physical harm." We conclude that the domestic abuse assessment was properly applied to Solomon's conviction.
¶22 For the foregoing reasons, we affirm.
By the Court. -Judgment and order affirmed.
This opinion will not be published. WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.