COURT OF APPEALS
DECISION
DATED AND FILED

December 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1178-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF131

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DELANEY K. WATT,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Fond du Lac County: PETER L. GRIMM and LAURA J. LAVEY, Judges. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Delaney K. Watt appeals from a judgment convicting him of a dozen criminal offenses and an order denying his postconviction motion.[1] Watt argues that the circuit court erroneously exercised its discretion in denying trial counsel's motion to withdraw from representing Watt and erred in denying Watt's various pretrial suppression motions. He also argues that trial counsel rendered ineffective assistance in failing to investigate and pursue various defenses. For the reasons that follow, we affirm.

## BACKGROUND

¶2 Watt was charged with multiple serious offenses after a shooting in Fond du Lac County. Police responded to a call in the parking lot of an apartment complex where they found a man and a woman with serious gunshot wounds. Witnesses reported that a black or gold car entered the parking lot, stopped, and a man exited, running toward the apartment building while firing a pistol at individuals near the entry door.

¶3 An anonymous tip to the police identified Watt as the shooter, claiming Watt had been in a fight earlier that day with Allen, who was in the group by the entry door.[2] Officers sought to search the apartment Watt shared with his girlfriend, Danella Thurman. In a phone conversation with Thurman, a detective requested that Thurman leave work and meet police at the apartment. Once there, Thurman unlocked the door and officers followed her inside. Officers

---

[1] The Honorable Peter L. Grimm presided over the jury trial and sentencing hearing; Judge Grimm also entered the judgment of conviction. The Honorable Laura J. Lavey presided over the postconviction evidentiary hearings.

[2] We use the pseudonyms offered by the parties to protect the victims' privacy. We use the pseudonyms Allen, John, and Susan for the victims in this case.

claimed Thurman invited them in by saying something like "Let's go in." Once inside, police smelled marijuana, halted their conversation, and left to obtain a search warrant. Upon returning with a warrant, police searched the apartment and found marijuana, drug paraphernalia, and a box for a .40 caliber Glock handgun. They also discovered packaging materials for cocaine and crack cocaine, along with additional drug paraphernalia. Both Watt and Thurman left their fingerprints on several of the illicit items found during the search.

¶4    Less than two weeks before the scheduled jury trial, trial counsel moved to withdraw from the case at Watt's insistence. The circuit court denied the motion after a thorough inquiry into the reason for the request, which was primarily the fact that counsel refused to file certain pretrial motions. It was satisfied that the perceived conflict could be rectified by litigating the motions that Watt wanted counsel to litigate. Consequently, Watt's trial counsel filed all such motions. The court denied Watt's pretrial motions after a hearing.

¶5    A jury found Watt guilty of the following charges after a five-day trial: first-degree recklessly endangering the safety of Allen while using a dangerous weapon; causing first-degree reckless injury to John while using a dangerous weapon; first-degree recklessly endangering John's safety while using a dangerous weapon; causing first-degree reckless injury to Susan while using a dangerous weapon; first-degree recklessly endangering Susan's safety while using a dangerous weapon; possession of a firearm by a convicted felon; endangering safety by the reckless use of a firearm; possession of a controlled substance (THC); maintaining a drug house while using a dangerous weapon, as party to the crime (PTAC); possession with intent to deliver cocaine in an amount greater than 40 grams while using a dangerous weapon, PTAC; possession with intent to deliver THC in an amount greater than 200 grams but less than 1,000 grams while

using a dangerous weapon, PTAC; and obstructing an officer. The jury found Watt not guilty of two counts of aggravated battery.

¶6 The circuit court sentenced Watt to 95 1/2 years of initial confinement, followed by 65 years of extended supervision. Watt filed a postconviction motion arguing that his trial counsel had a conflict of interest given his alleged dishonesty to Watt and the court regarding filing the motions. Watt also asserted that counsel was ineffective for his failures to investigate Watt's alibi witness, and the identity of an unknown individual on a bike purportedly discussing having a gun and a crossbow near the scene of the shooting. He argued that counsel's dishonesty and the resulting breakdown in trust created a conflict that impaired his defense. Additionally, Watt identified the individual on the bike as Donald Davis, Jr., and argued that Davis had both motive and opportunity to commit the shooting, which trial counsel failed to investigate or present. The postconviction court denied Watt's motion. Watt appeals.

¶7 We include additional facts below as necessary to the discussion.

## DISCUSSION

*Denial of Trial Counsel's Motion to Withdraw*

¶8 Watt's first assertion on appeal is that the circuit court erroneously exercised its discretion in denying his trial counsel's motion to withdraw from representation. He argues that "[t]he facts demonstrate a complete breakdown in communication and trust between Mr. Watt and [trial counsel], warranting court intervention to protect Mr. Watt's Sixth Amendment right to effective assistance of counsel." Watt requested that the court appoint him substitute counsel.

¶9     The United States and Wisconsin Constitutions guarantee criminal defendants the right to the effective assistance of counsel, and that right includes representation that is "free from conflicts of interest." *State v. Street*, 202 Wis. 2d 533, 541, 551 N.W.2d 830 (Ct. App. 1996). We review the denial of a motion to withdraw and substitute counsel for an erroneous exercise of discretion while considering a number of factors, including:

> (1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.

*State v. Jones*, 2010 WI 72, ¶25, 326 Wis. 2d 380, 797 N.W.2d 378 (quoting *State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988)). "A discretionary determination 'must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.'" *Lomax*, 146 Wis. 2d at 359 (citation omitted).

¶10    To require the appointment of new counsel, Watt must show good cause such as a complete breakdown in communications, an actual conflict of interest, "or an irreconcilable conflict which could lead to an unjust verdict." *See State v. Darby*, 2009 WI App 50, ¶29, 317 Wis. 2d 478, 766 N.W.2d 770. Mere disagreement over trial strategy does not constitute good cause to require the circuit court to permit counsel to withdraw. *Id.* Finally, our supreme court has held that eleventh-hour requests are considered a delaying tactic. *Lomax*, 146 Wis. 2d at 361-62.

¶11     Watt's mother retained trial counsel in June 2019.  In May 2020, the circuit court scheduled a jury trial to begin on April 12, 2021.  At a pretrial hearing two weeks before the scheduled trial, counsel stated that Watt wanted him to withdraw.  Counsel explained that Watt wanted him to file suppression motions that counsel thought lacked merit.  However, counsel and Watt eventually agreed at the hearing to try to reconcile their differences and, if that effort failed, counsel would file a formal motion to withdraw.  He did so two days later, just twelve days before trial.

¶12     The circuit court held a hearing on the withdrawal motion, which was prompted by trial counsel's refusal to litigate four suppression motions that Watt wanted him to pursue.  Counsel had advised Watt from the onset of his representation that the motions were meritless, but had apparently told Watt he would file the motions nonetheless.  Counsel later told Watt he had filed the motions, though he did not actually file them.  After discovering that the suppression motions had not been filed, Watt sent a letter to the court in July 2020, stating that he wanted counsel to withdraw because counsel would not file his motions.  Neither Watt nor trial counsel further pursued withdrawal at that time.

¶13     At the hearing on the withdrawal motion, Watt said he had not sought to remove counsel at the two court hearings held in July 2020, or any other pretrial proceeding, because counsel had promised to file the motions Watt desired.  But less than two weeks before the jury trial, Watt requested "court appointed counsel to replace [trial counsel] as soon as possible."  To resolve the dispute, the circuit court allowed trial counsel to file Watt's motions and subsequently litigate them at a suppression hearing before trial.  Despite this apparent resolution, Watt stated he no longer had confidence in counsel's ability to

argue the motions, and he hoped his next lawyer would protect his constitutional rights and pursue his motions.

¶14    The circuit court denied the motion to withdraw.  It explained to Watt that counsel decides what motions to file and not to file because a lawyer is ethically bound not to pursue frivolous motions.  The court opined that the next lawyer would likely arrive at the same conclusion and that if the motions are meritless, then no constitutional rights are unprotected.  The court also found "undue delay" in waiting until twelve days before trial to file the motion, determining that granting the motion would necessarily delay the jury trial at "a great inconvenience to the parties, the victims, the State, the public."  The court summed up by finding "[t]his case is old."

¶15    In the end, the circuit court found that mere disagreement over strategy in terms of whether to file motions was not good cause to justify withdrawal of counsel at the last minute.  Watt was "not able to show the [c]ourt why the next lawyer would be any different."  The court explained that its "concern is that the next lawyer will have the same legal conclusions, won't file the motions, and it will be the same issue again over and over that Mr. Watt's not happy because the lawyer is not filing those motions."

¶16    Here, the circuit court made an adequate inquiry into the bases of the motion: Watt alleged a general lack of communication between him and his attorney, and his attorney denied any general lack of communication, instead indicating that Watt's primary complaint regarding trial counsel was counsel's unwillingness to file motions he deemed meritless.  The court conducted a lengthy hearing, including taking testimony from trial counsel and Watt.  It ultimately concluded that Watt was not entitled to new counsel.

¶17     Based on our thorough review of the record and arguments, we conclude that the circuit court properly exercised its discretion to deny the motion for counsel to withdraw. The balance of Watt's right to counsel against society's interest in proceeding to trial did not weigh in favor of appointing Watt new counsel on the eve of the scheduled trial. *See Lomax*, 146 Wis. 2d at 360 (holding court must "balance[] the defendant's constitutional right to counsel against societal interest in the prompt and efficient administration of justice").

¶18     In addition to his arguments addressed above, Watt also maintains on appeal that trial counsel had an actual conflict of interest and, as such, could not represent Watt. The circuit court explicitly rejected Watt's repeated insistence on an actual conflict, and the record conclusively shows no actual conflict—trial counsel zealously and effectively represented Watt before and at trial free from any conflict of interest.

¶19     As noted, after the circuit court denied trial counsel's withdrawal motion, counsel agreed to file and litigate the suppression motions. Counsel vigorously advocated to suppress evidence on Watt's behalf. Moreover, counsel convinced the jury to find Watt guilty of the lesser-included offense of recklessly endangering the safety of the first shooting victim rather than the greater offense of attempted first-degree intentional homicide, and to find Watt not guilty of two counts of aggravated battery.

¶20     After an exhaustive inquiry into Watt's reasons for wanting his counsel to withdraw and new counsel appointed, the circuit court determined that Watt's motion was untimely and filed at least partially as a delay tactic. A court's "decision to not permit an indigent defendant to get a new lawyer will not be overturned when the [r]ecord is devoid of evidence 'of a conflict that made

counsel's continued representation *untenable*.'" **State v. Boyd**, 2011 WI App 25, ¶13, 331 Wis. 2d 697, 797 N.W.2d 546 (citation omitted).  Here, the record is replete with evidence that there was no insurmountable breakdown in communication between Watt and his counsel.  To the contrary, the court explicitly found "there hasn't been the requisite showing to the degree necessary that the communication would lead to an unjust result, unfair trial, or inadequate presentation of the evidence because the lawyer[ is] in charge of trial strategy."

¶21    Based on the foregoing discussion, we conclude that the circuit court considered the proper factors in relation to the facts of record and reached a reasoned and reasonable conclusion.  *See **id.***  Accordingly, the court acted within its discretion in denying the motion to withdraw and appoint new counsel.  Watt is not entitled to a new trial on this basis.

*Denial of Watt's Motions to Suppress*

¶22    Watt next argues that the circuit court erred in denying each of his motions to suppress.  As noted above, trial counsel ultimately did file and litigate the motions.  The court began the suppression hearing the day after counsel filed the motions and completed it on the first day of trial.

¶23    At the start of the suppression hearing, Watt moved to discharge trial counsel because he would not subpoena certain witnesses for the hearing.  The first such witness was Watt's probation officer.  The prosecutor explained that this witness was not needed because the State was not relying on the apprehension request issued by Watt's probation officer as the basis for his arrest.  Another witness Watt wanted subpoenaed was his girlfriend, Danella Thurman.  Police had searched Thurman's residence, which Watt frequently stayed at, pursuant to a warrant that they sought after seeing contraband items in plain sight upon

consensual entry into the residence. The prosecutor explained that Thurman had been charged as Watt's co-defendant and her attorney had refused to let her be served, further advising her to plead the Fifth Amendment and remain silent if called to testify.

¶24 The circuit court heard testimony and argument regarding the legality of Watt's arrest during a traffic stop the day after the shooting. The court found that police had probable cause to arrest Watt without a warrant. The hearing continued with testimony and argument regarding whether police violated Watt's *Miranda*[3] rights during a custodial interrogation, thereby rendering any derivative evidence inadmissible. As background, approximately 30 minutes into the interview, Watt stated, "[j]ust take me to the County" or "I'm ready to go to the County." He repeated it twice more later on. Watt did not say he wanted to stop the interview. He continued talking. Moreover, 2 hours and 25 minutes after the interview began, Watt was taken to the county jail as soon as he made it clear he wanted to stop talking. Watt did not testify at the suppression hearing to dispute any of this. Based on the evidence before it, the court found that police did not violate *Miranda* and Watt did not unequivocally invoke his right to silence, but it agreed to review the recording of the interview before making a final decision. The court reaffirmed its ruling on the first day of trial.

¶25 Watt also brought a motion through counsel alleging that the criminal complaint contained materially false statements and a detective at the preliminary hearing had made false statements. Watt argued that dismissal of the complaint is the proper remedy. The circuit court heard the motion on the first day

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

of the trial and denied it after finding that there were no materially false statements.

¶26 Finally, the circuit court heard testimony and argument in support of Watt's motion to suppress evidence because the search of Thurman's residence was unlawful. Watt sought the suppression of Thurman's testimony after the State granted her use immunity. The court denied the motion after finding that Thurman had invited police into her home and police discovered the incriminating evidence in plain view as the basis for a warrant to search the home later.

¶27 An order granting or denying a suppression motion presents a question of constitutional fact. *State v. Howes*, 2017 WI 18, ¶17, 373 Wis. 2d 468, 893 N.W.2d 812. "A question of constitutional fact is a mixed question of law and fact to which we apply a two-step standard of review." *State v. Tomaszewski*, 2010 WI App 51, ¶5, 324 Wis. 2d 433, 782 N.W.2d 725 (citation omitted). "We review the circuit court's findings of historical fact under the clearly erroneous standard, and we review independently the application of those facts to constitutional principles." *Id.*

¶28 Based on our review of the record and the circuit court's findings, we conclude that the court properly denied Watt's pretrial motions challenging his arrest, his statement to police, and the search of his girlfriend's apartment. There was no merit to any of the motions. The court found the police had both reasonable suspicion and probable cause to arrest Watt the day after the shooting when he was driving the distinctive car the shooter had driven.

¶29 We further uphold the findings that Watt did not unequivocally invoke his right to silence when questioned by police and there was no *Miranda* violation. Watt's girlfriend invited police into the apartment she shared with Watt

11

to speak with them. Once inside, police lawfully saw incriminating evidence in plain view that provided probable cause for a search warrant. The search produced incriminating evidence of drug and weapons offenses, and Watt was charged accordingly. For all the foregoing reasons, the circuit court did not err in denying the suppression motions.

### *Ineffective Assistance of Trial Counsel*

¶30 The final set of arguments advanced by Watt relate to instances in which he alleges that trial counsel rendered ineffective assistance. He first argues that counsel was deficient because, on the circuit court's order, counsel continued to represent Watt despite having "an actual conflict of interest." We concluded above that Watt failed to show that counsel had an actual conflict of interest such that withdrawal shortly before trial was warranted. For that reason, we do not address this argument further.

¶31 Watt's next argument in support of his claim that trial counsel rendered ineffective assistance is based on Watt's belief that counsel should have further investigated and introduced at trial evidence pertaining to Watt's alibi and to a possible third-party perpetrator in support of a ***Denny***[4] motion. Over the course of two days, the postconviction court held an evidentiary hearing on Watt's ineffective assistance claims. *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶32 "Whether counsel was ineffective is a mixed question of fact and law." ***State v. Balliette***, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334.

---

[4] ***State v. Denny***, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984).

"The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review" independently. *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. To prove a claim of ineffective assistance of counsel, the defendant must satisfy two tests: first, that counsel's performance was deficient; and second, that counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to satisfy either prong, we need not consider the other." *Breitzman*, 378 Wis. 2d 431, ¶37.

¶33 Based on our examination of the record and the circuit court's findings from the *Machner* hearing on the alibi claim, we conclude that trial counsel's performance was not deficient because it was objectively reasonable. "Counsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. "The reasonableness of counsel's conduct must be evaluated 'on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Balliette*, 336 Wis. 2d 358, ¶23 (quoting *Strickland*, 466 U.S. at 690).

¶34 Here, Watt argues that the alibi defense was not investigated, but the record reflects that trial counsel spoke to Watt's purported alibi witness, Lionel Armstrong, and Armstrong did not provide an alibi. Armstrong could only state that he was with Watt on the day of the shooting—he was not with him that night, when the shooting happened. Trial counsel also listened to a jail call in which Watt tried to coerce Armstrong into providing a false alibi but Armstrong would not acquiesce to Watt's coercion.

¶35    We first conclude that Watt has not demonstrated that trial counsel's performance was deficient in his investigation of an alibi defense.  The record reflects that trial counsel spoke to Watt's purported alibi witness and concluded that he was not useful to Watt's defense because he could not place Watt away from the crime.  Because Watt has failed to make a showing of deficient performance, we will not engage in a prejudice analysis on his alibi argument. *See Breitzman*, 378 Wis. 2d 431, ¶37.

¶36    Watt next argues that trial counsel was ineffective in its failure to investigate and introduce a ***Denny*** defense.  Watt believes that the evidence satisfies the third-party perpetrator test by showing there was a legitimate tendency that a man named Donald Davis was the actual perpetrator of the shootings.  Watt suggests that the earlier altercation involving Allen and Davis, referenced in the Background section, proves motive.  However, even if we assume without deciding that motive has been shown, Watt's argument fails under the analyses of both opportunity and direct connection.

¶37    The opportunity test "asks whether the alleged third-party perpetrator *could have* committed the crime in question.  This often, but not always, amounts to a showing that the defendant was at the crime scene or known to be in the vicinity when the crime was committed." *State v. Wilson*, 2015 WI 48, ¶65, 362 Wis. 2d 193, 864 N.W.2d 52.  Watt's claim fails because he does not allege material facts to support that Davis was present at the site of the shooting.

¶38    Counsel had no basis for presenting the third-party perpetrator theory because there was no legitimate tendency that the man on the bike, even if it was Davis, was the gunman for one obvious reason: the shooter arrived and fled down the alley in a black Chevy Malibu.  He was not on a bike.  Watt conceded

postconviction that the surveillance video shows the gunman arriving and fleeing the scene in a car; not on a bike.

¶39     The man on the bike was never identified, and Davis had not yet been found when the parties briefed this appeal. Watt can only speculate that the man on the bike was Davis and that Davis was the gunman. He offers no evidence to support that speculation. The drunk man on the bike did not brag that he shot anyone; he bragged only that he had a Glock and a crossbow. As of the time of briefing, it remains uncertain who the drunk man on the bike was and, even if it was Davis, he cannot be located. The facts that the gunman arrived and fled the scene in a Chevy Malibu, not on a bike, cuts heavily against offering Davis as a potential perpetrator.

¶40     We conclude that Watt has failed to show that there is a legitimate tendency that a third-party perpetrator committed the shooting. Accordingly, we conclude that Watt failed to show that trial counsel was ineffective for not pursuing a ***Denny*** defense. Therefore, the postconviction court did not err in denying Watt's motion. *See **Thiel***, 264 Wis. 2d 571.

### CONCLUSION

¶41     Upon the foregoing reasons, we affirm the judgment of conviction and the order denying postconviction relief. We defer to the circuit court's factual findings as to each issue Watt raises and conclude that the court did not erroneously exercise its discretion in denying the eleventh-hour motion for trial counsel to withdraw. We further conclude that the court did not err in denying the various suppression motions and related motion, nor did it err in concluding that Watt did not receive ineffective assistance of trial counsel.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2023-24).