BRASH, J.
¶ 1 Terrance Lavone Egerson appeals from his judgment of conviction, entered upon a jury's verdict, as well as an order of the trial court denying his postconviction motion. Egerson argues that his right to self-representation was violated when the trial court denied his request to proceed pro se during an exchange with the trial court at a motion hearing. The State argues that Egerson's request was not clear and unequivocal and, therefore, he did not invoke his right to self-representation. Accordingly, the State contends that there was no violation and thus no error on the part of the trial court. We agree and affirm.
BACKGROUND
¶ 2 In March 2015, Egerson was charged with stalking and several counts of violating domestic abuse injunctions as a repeat offender. These charges stemmed from Egerson's repeated contact and harassment *835 of his wife in spite of the injunctions: he made numerous phone calls to her, both while he was in jail and out; he sent her numerous letters, some of them threatening; he made calls to the Milwaukee Police Department pretending to be a reporter to obtain information about the domestic violence case against him; he called his wife's landlord pretending to be a police detective investigating his wife; and he was arrested-while out on bail after a previous arrest for a domestic violence incident-when he was found hiding in his wife's basement. Several additional counts for domestic violence injunction violations were subsequently added.
¶ 3 In August 2015, Egerson's first attorney, Justin Singleton, requested to withdraw as counsel. He cited a disagreement over trial strategy regarding whether the assistant district attorney assigned to the case, Nicolas Heitman, should be called as a witness; Attorney Heitman had observed certain conduct by Egerson that was set forth in the complaint. The trial court refused to allow Attorney Singleton to withdraw based on a "trial strategy showdown[.]"
¶ 4 However, in October 2015, Attorney Singleton again moved to withdraw as counsel for Egerson. Attorney Singleton explained that Egerson did not have "sufficient faith in [Attorney Singleton's] efforts or ... abilities" to defend him, noting that Egerson was speaking to the media against Attorney Singleton's advice, preparing motions on his own behalf, and accusing Attorney Singleton of working in concert with the District Attorney's Office and against him. Thus, Attorney Singleton declared that his attorney/client relationship with Egerson was "irreparably destroyed" and that he did not believe that he could effectively represent Egerson any longer. The trial court also heard from Egerson, who stated that Attorney Singleton's representation had been "totally deficient" and that there had been a "total breakdown" in communication.
¶ 5 The trial court granted Attorney Singleton's motion to withdraw:
THE COURT: I'm going to let Mr. Singleton withdraw. But you know what, Mr. Egerson, you may get a lawyer that will come close to being as good as Mr. Singleton, but you won't get one who's better. That's a fact. He's a very good lawyer. I'm very impressed, in the short time I've been back on the bench, with Mr. Singleton's abilities in a number of cases. In fact, he's been more than good, especially on constitutional level issues.
THE DEFENDANT: I've been impressed.
THE COURT: So-no, apparently you haven't been, Mr. Egerson, since you-no, Mr. Egerson, you're done talking this morning.
THE DEFENDANT: Yes. Yes.
THE COURT: I'm going to let you have another lawyer. You think you know so much more about trial strategy and how to prepare a case and how to get ready for trial, we'll see how you do with your next lawyer. But here's the thing, Mr. Egerson. You're heading down a slope, based on this record, where you're going to find yourself ... in a position where a court says you're waiving your right to counsel and you're going to be representing yourself, which would be the biggest mistake of your life. So-
THE DEFENDANT: I understand.
¶ 6 As the parties and the trial court began discussing the logistics of turning over the discovery relating to the case, Egerson declared that there was further discovery that had not been turned over by the State with regard to a previous charge against him. The trial court responded:
*836 THE COURT: Mr. Egerson, you're not the lawyer of record in this case. I'm not interested in-
THE DEFENDANT: Well, you know what, Your Honor, let me represent myself and have co-counsel then.
THE COURT: No.
THE DEFENDANT: It seems like every time I try to do something that's benefiting me, every time there's a problem he-he's-I've been having a problem with [ADA] Heitman ever since, I've been charged with 24 counts, man.
THE COURT: Mr. Egerson-
THE DEFENDANT: Let me represent myself and have no counsel.
THE COURT: Better think about that one.
THE DEFENDANT: I'm sick of him, man. I'm tired of Mr. Heitman charging me with hard charges. He's just continuing to charge me. I'm doing six years for bail jumping.
¶ 7 The hearing ended shortly thereafter. New counsel for Egerson was subsequently assigned. There was no further mention of Egerson proceeding pro se .
¶ 8 The case went to trial in April 2016. The jury found Egerson guilty of five counts of violating domestic abuse injunctions as a repeater, and one count of stalking. He was sentenced to twenty-three years, bifurcated as twelve years of initial confinement and eleven years of extended supervision.
¶ 9 Egerson filed a postconviction motion seeking a new trial on the grounds that the trial court had denied Egerson his constitutional right to self-representation. The State argued that Egerson "never made a clear and unequivocal request to represent himself" during his exchange with the trial court at the October 2015 hearing. Rather, the State asserted that Egerson's statements "stemmed from the [d]efendant's frustration with [the trial court] not addressing the discovery issue when he wanted." The trial court agreed that Egerson's request was not clear and unequivocal, and therefore denied his motion. This appeal follows.
DISCUSSION
¶ 10 Defendants have the right to conduct their own defense under both the Sixth Amendment of the United States Constitution and article I, section 7 of the Wisconsin Constitution. State v. Klessig , 211 Wis.2d 194, 203, 564 N.W.2d 716 (1997) ; Faretta v. California , 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (although not explicitly stated in the Sixth Amendment, "the right to self-representation-to make one's own defense personally-is ... necessarily implied by the structure of the Amendment"). Whether a defendant's constitutional right to self-representation has been violated is a question of law that we review de novo . State v. Darby , 2009 WI App 50, ¶ 13, 317 Wis.2d 478, 766 N.W.2d 770.
¶ 11 A defendant who wishes to invoke the right to self-representation must "clearly and unequivocally" inform the trial court of this decision. Faretta , 422 U.S. at 835, 95 S.Ct. 2525. If the defendant establishes this request clearly and unequivocally, the trial court must then ensure that the defendant "has knowingly, intelligently and voluntarily waived the right to counsel," and that the defendant is "competent to proceed pro se ." Klessig , 211 Wis.2d at 203, 564 N.W.2d 716 (italics added). These requirements are generally satisfied when the trial court engages in a colloquy with the defendant to confirm the defendant's understanding of the ramifications that relate to this choice. Id. at 206, 564 N.W.2d 716.
¶ 12 Here, however, the issue is whether Egerson invoked the right to self-representation *837 in the first place. The State argues that he did not, based on the context of the exchange between Egerson and the trial court when Egerson mentioned representing himself; the State contends that Egerson's statements were the result of frustration with the circumstances of the moment, as opposed to a clear and unequivocal request to represent himself. There are no cases in Wisconsin that define when a defendant invokes this right and triggers the requirement of the Klessig colloquy. Darby , 317 Wis.2d 478, ¶ 14, 766 N.W.2d 770.
¶ 13 This court recognized this gap in the law surrounding the right of self-representation in Darby . Id. In that case, Darby had made general comments in a letter to the trial court a few days before trial-and then again on the morning of jury selection-regarding his concerns about the lack of contact and communication with his attorney. Id. , ¶¶ 5-6. In fact, Darby told the court that he wanted to dismiss his lawyer because he had "shown very little interest in [his] case." Id. , ¶ 6. Darby also stated that there were documents that he wanted to review so that he could " 'prepare [himself] for [his] jury trial.' " Id.
¶ 14 After Darby was convicted, he filed a postconviction motion arguing that his constitutional right to self-representation was violated because he had invoked his right during this exchange with the trial court. Id. , ¶ 12. The trial court denied the motion, stating that Darby's comments were "vague and general and provided no basis upon which to find ... that Darby wanted to proceed pro se [.]" Id. , ¶ 9 (italics added). Darby then appealed.
¶ 15 In our analysis of that appeal, we examined the "general framework" of the law on self-representation, and then looked to other jurisdictions that had addressed the issue of when that right is invoked. Id. , ¶ 15. We recognized that the right to counsel "is of such fundamental importance that it attaches automatically at the commencement of adversary proceedings against a defendant," and thus "non-waiver is presumed[.]" Id. , ¶ 17.
¶ 16 We further noted that Faretta did not address the issue of how the right of self-representation was invoked. Darby , 317 Wis.2d 478, ¶ 18, 766 N.W.2d 770. Additionally, we observed that while Faretta did not mandate a clear and unequivocal declaration by the defendant about proceeding pro se , many other jurisdictions, including all twelve federal courts of appeal, had "expressly held that a defendant must clearly and unequivocally make such a declaration in order to invoke the right to self-representation." Darby , 317 Wis.2d 478, ¶ 19, 766 N.W.2d 770.
¶ 17 We then explained the purposes for the clear and unequivocal requirement, as set forth in a case from the Ninth Circuit: (1) it "acts as a backstop for the defendant's right to counsel, by ensuring that the defendant does not inadvertently waive that right through occasional musings on the benefits of self-representation," further noting that "[b]ecause a defendant normally gives up more than he gains when he elects self-representation, we must be reasonably certain that he in fact wishes to represent himself"; and (2) it "prevents a defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation" by forcing him or her to make an "explicit choice," thus eliminating potential issues on appeal where a defendant could alternatively claim either a violation of the right to counsel or a violation of the right to self-representation. Id. , ¶ 20 (quoting Adams v. Carroll , 875 F.2d 1441, 1444 (9th Cir.1989) ).
¶ 18 We further determined that there is no duty on the part of the trial court to advise a defendant regarding his or her *838 right to self-representation (i.e., perform the Klessig colloquy) if that defendant has not clearly and unequivocally invoked that right. Darby , 317 Wis.2d 478, ¶ 22, 766 N.W.2d 770. We reasoned that the right to self-representation "is grounded in consideration for an individual's free choice rather than in fair trial concerns," and only fair trial concerns require a knowing and intelligent waiver by the defendant. Id. Thus, without a clear and unequivocal invocation by a defendant, we held that there could not be a violation of his or her right to self-representation, and thus the trial court would have no obligation to advise the defendant regarding that right. Id. , ¶ 24.
¶ 19 We then turned to the specific facts of the Darby case. We concluded that the focus of Darby's statements to the court was dissatisfaction with his current attorney, which did not necessarily mean that he wanted to proceed pro se ; he could instead have been requesting another attorney. Id. , ¶ 25. "[A] defendant's expressions of dissatisfaction with his or her current attorney or a request for another attorney do not constitute a clear and unequivocal declaration that the defendant wants to proceed pro se ." Id. , ¶ 26 (italics added). Thus, we determined that Darby had failed to make a clear and unequivocal declaration that he wanted to proceed pro se , and therefore there was no violation of his right to self-representation. Id. , ¶ 27.
¶ 20 The year after Darby was decided, our supreme court addressed a similar issue in State v. Imani , 2010 WI 66, 326 Wis.2d 179, 786 N.W.2d 40. In that case, the defendant also expressed dissatisfaction with his trial counsel, and told the trial court " 'ain't nobody going to represent myself better than me.' " Id. , ¶ 8. The court then asked Imani how he would "convince the court that he is competent to represent himself." Id. , ¶ 9. An exchange between Imani and the court followed, where Imani described his education and experience with the legal system. Id.
¶ 21 The trial court denied Imani's request to represent himself. Id. , ¶ 10. The court described Imani's request as "episodic driven" because he had lost his suppression motion that day. Id. In fact, the court deemed Imani's request "a flippant short term or immature decision[.]" Id. Therefore, because Imani had no actual experience representing himself, and in order to "preserve the trial date," the trial court denied his request. Id. Imani did not request to proceed pro se after that, but nevertheless appealed his conviction on grounds that he had been deprived of his constitutional right to self-representation. Id. , ¶¶ 12-13.
¶ 22 This court agreed with Imani, and remanded the matter for a new trial because the trial court had failed to conduct a Klessig colloquy. Imani , 326 Wis.2d 179, ¶ 14, 786 N.W.2d 40. Our supreme court reversed that decision, however. The supreme court concluded that the trial court had engaged in two of the four inquiries under the Klessig colloquy and determined that Imani did not meet the requirements; since the trial court needs only to determine that a defendant does not meet one of the four Klessig requirements before denying a request to proceed pro se , the court properly rejected Imani's request. Imani , 326 Wis.2d 179, ¶ 26, 786 N.W.2d 40. Thus, the supreme court held that the trial court had properly denied Imani's request to represent himself. Id. , ¶ 40.
¶ 23 Imani then petitioned for a writ of habeas corpus with the United States District Court for the Western District of Wisconsin, which denied the petition. Imani v. Pollard , 2014 WL 4828876, at *1 (W.D. Wis. Sept. 29, 2014). Imani appealed to the Seventh Circuit, which reversed and remanded the matter to the District Court to grant the writ on grounds that the *839 Wisconsin Supreme Court's decision "was flatly contrary to Faretta [.]" Imani v. Pollard , 826 F.3d 939, 943 (7th Cir.2016).
¶ 24 Specifically, the Seventh Circuit took issue with our supreme court's analysis of the trial court's exchange with Imani relating to the two Klessig requirements that the trial court had discussed. Imani , 826 F.3d at 944. The Seventh Circuit held that the Wisconsin Supreme Court had "transformed the requirement of knowing and voluntary waiver from a duty of the trial judge into a burden on the accused," which does not comport with Faretta and its progeny. Imani , 826 F.3d at 944-45.
¶ 25 In his argument presented in this appeal, Egerson relies on the Seventh Circuit's decision in Imani ; however, we do not find it persuasive. The facts of this case-that is, the exchange between the trial court and the defendant-are distinguishable from those in Imani . In Imani , the trial court's exchange included questions to Imani that tracked those of the Klessig colloquy; thus, all of the appellate courts in their review of that case had implicitly determined that the right of self-representation had been invoked.
¶ 26 To follow the analysis of Imani would thus require us to disregard the threshold issue here: whether the right to self-representation was actually invoked by Egerson. However, we feel that a review of that particular issue, and the circumstances surrounding it, is prudent here.
¶ 27 Egerson's statements to the trial court, made within a very short time of each other, bounced from "let me represent myself and have co-counsel" to "[l]et me represent myself and have no counsel." They were made during a hearing where Egerson's trial counsel's motion to withdraw was heard and granted, and Egerson had been advised that he would be getting a new attorney. However, the trial court included a word of warning to Egerson that his attorney had done a good job and there were no guarantees regarding the experience of the new attorney being assigned. Furthermore, the trial court noted that continued complaints about his attorney could result in Egerson "heading down a slope, based on this record, where you're going to find yourself ... in a position where a court says you're waiving your right to counsel and you're going to be representing yourself, which would be the biggest mistake of your life." Egerson replied that he understood. He did not mention wanting to represent himself at this point, and instead even seemed to be in agreement with the trial court's position.
¶ 28 Later in this exchange, Egerson became upset after requesting and being denied a discovery request he made pro se ; in fact, the trial court refused to entertain Egerson's request because Egerson was going to be assigned new counsel. It was at this point that Egerson made his statements about representing himself. By then, the trial court had already cautioned Egerson that he was "not the lawyer of record" in the case, and had told Egerson that he was "done talking this morning." Additionally, the record indicates that during this time, Egerson was focused on his complaints about alleged bias against him on the part of the assistant district attorney; he had expressed suspicions that his attorney-who had just been allowed to withdraw-had been acting in concert with the district attorney. In short, the hearing was contentious.
¶ 29 At the time Egerson mentioned self-representation, the trial court did not engage Egerson in any questioning that tracked the Klessig colloquy. In fact, the trial court did not appear to consider Egerson's statements to be a request for self-representation at all; rather, its response to Egerson is indicative of an attempt to move the proceedings forward without additional *840 interruptions. Furthermore, Egerson never broached the topic of self-representation again-at that hearing or during the rest of the proceedings related to his case.
¶ 30 From those facts, we cannot conclude that Egerson's statements were a clear and unequivocal invocation of his right to self-representation. Instead, we find these facts to be more in line with those of Darby : a defendant who is disgruntled with his attorney and thus expresses an opinion that he could do a better job representing himself. These "occasional musings on the benefits of self-representation" do not rise to the level of invoking the right of self-representation. See Darby , 317 Wis.2d 478, ¶ 20, 766 N.W.2d 770 (quoting Adams , 875 F.2d at 1444 ). As a result, there was no violation of Egerson's right to self-representation. We therefore affirm his judgment of conviction and the order of the trial court denying his postconviction motion.
By the Court. -Judgment and order affirmed.