PER CURIAM.
¶1 M. L. Powell appeals a judgment of conviction and an order denying postconviction relief. Powell claims he was denied his right to self-representation at trial. We conclude that Powell's request to represent himself was not clear and unequivocal, and, in any event, it was untimely. We therefore affirm.
BACKGROUND
¶2 Powell was charged with three counts of armed robbery with use of force, five counts of felony bail jumping, and single counts of attempted armed robbery with use of force and possession with intent to deliver narcotics. Powell allegedly held up two women and one man on Christmas Eve as they were getting into a car outside of a Racine tavern. Powell put a gun to the man's head and forced his way into the car with them. He told one of the women to drive or he would "blow [the man's] brains out." Powell ordered the women to hand over their purses and went through the man's pockets for money. Powell then ordered the driver to take him to another address. Once there, Powell fled.
¶3 Outside the same tavern on the night after Christmas, Powell struck a woman multiple times in the face with a handgun and stole her purse, which contained prescription drugs. Police later found bottles of these drugs in Powell's possession, along with the victims' cell phones. Powell said he sold prescription drugs and that he got the pills from his roommate. However, the victim of the second incident advised police the pill bottles were the prescriptions that she just filled. At the time of the robberies, Powell was out on bond in three other felony cases.
¶4 The case proceeded to trial with Powell represented by an attorney appointed by the State Public Defender's office. On the morning of trial, Powell's counsel informed the circuit court immediately before jury selection that Powell "had indicated a desire to go pro se. I checked with him just now and I believe it is still his desire to do that." The court then engaged Powell in a colloquy that focused almost solely on the potential punishment associated with the charges and Powell's level of education. The court denied Powell's request to proceed pro se upon concluding that he was not competent to represent himself, citing Powell's sixth grade education and the almost 200 years' maximum prison sentence Powell faced.
¶5 The subsequent trial ended in a mistrial after one of the victims testified that her cellphone stolen during the course of the robbery was found in Powell's possession and it was discovered that the State had inadvertently failed to share two investigative reports with the defense.
¶6 The case was set for retrial approximately one month later. The morning of trial, Powell initially refused to appear and had to be brought into the courtroom involuntarily. When the circuit court asked Powell if he had received the State's last plea offer, Powell refused to answer. When asked if it was his intention to proceed to trial, Powell again refused to answer. The court then asked if the parties had anything else to address. Breaking his silence, Powell said he wanted a new lawyer:
THE DEFENDANT: Yes, I want a new lawyer. My lawyer is not representing me the right way at all. He stated that he would come to see me. Never come to see me. And when he do come to see me, it's the same. I had this lawyer since February. I only seen him four or five times out of that. I would rather represent myself or either get a new lawyer.
THE COURT: Your motion for a new attorney, sir, is denied. [Defense counsel] was prepared and was doing exceedingly well in September and he is prepared to proceed today, so we will proceed.
THE DEFENDANT: What about representing myself?
THE COURT: We've discussed this on the record before, Mr. Powell, and I am not granting your motion to represent yourself. Given your education level, given the complexity of this case, given the seriousness of the charges, I already put those findings on the record at the last hearing. All right.
¶7 Powell's behavior during the ensuing trial was erratic and disrespectful. After the first victim testified, defense counsel informed the court at a sidebar that Powell "wants to remove himself from the courtroom and go back to his cell." Powell refused to answer the circuit court's questions about his waiver of the right to be present, forcing the court to find the waiver valid based on his silence. The trial continued in Powell's absence. When Powell later reappeared, his attorney raised the issue of Powell's competency to stand trial, noting Powell was refusing to communicate with him. Defense counsel also indicated to the court that he had "concerns based on [Powell's] thought process and comments made to me regarding staying or going during the trial that are irrational." The court found Powell was plainly competent to stand trial and that he "certainly talks when he wants to talk." The court found Powell "is just being disrespectful, he is being difficult, he is being disruptive and he is making a choice to do that." The court also found the reason Powell had previously absented himself was "so that these witnesses wouldn't be able to identify him as they did during the last trial."
¶8 Defense counsel later advised the circuit court that Powell had decided he would testify in his defense. However, Powell again refused to respond to the court during a colloquy about his decision to testify. The court found that Powell "has just shown complete contempt for this Court ...." Powell then talked to defense counsel again concerning his decision to testify, but Powell again refused to answer the court's questions regarding whether he wished to testify. The court then stated:
THE COURT: Mr. Powell, are you going to testify or not? I will give you, Mr. Powell, one last opportunity to answer this yes or no question. If you decide that you are going to continue to ignore my questions, that is your right, and I will have my court officer take you out of the courtroom for the remainder of these proceedings.
For the last time, Mr. Powell, knowing and understanding that you have a constitutional right to testify, knowing that you have a constitutional right not to testify, knowing that that decision is for you alone to make, tell me, Mr. Powell, what your decision is. Will you testify today or not?
¶9 After Powell continued to refuse to answer the circuit court, the court ordered Powell's removal from the courtroom for the remainder of the trial. The jury found Powell guilty on all counts.
¶10 Powell sought postconviction relief, alleging the circuit court had denied his right to self-representation. Powell also argued the court's colloquy with him before the first trial, and its brief exchange with him before the second trial, were insufficient under State v. Klessig , 211 Wis. 2d 194, 205-06, 564 N.W.2d 716 (1997) to show he knowingly, intelligently and voluntarily waived his right to represent himself and that he was not competent to proceed pro se. The court denied Powell's motion, reaffirming its conclusion that Powell was not competent to represent himself because he had only a sixth-grade education, and the court's "overriding concerns" with Powell's "inability to answer even the most basic questions." The court noted in particular that when it asked Powell how far he had gone in school, Powell's response was "12," which gave the impression that he attended school through the 12th grade. The court stated that "it was only after significant other questions that it was, well, he went to age 12, not through the 12th grade, but a 6th grade education." "So the literacy level," the court explained, "the ability to just answer very basic questions was an overriding concern and this was demonstrated in a number of hearings over the course of time with Mr. Powell." The court concluded, "given all of my impressions of Mr. Powell, temperament issues, educational issues, ability to represent himself, I stand by the decision and believe that I made the correct decision in not allowing Mr. Powell to represent himself." Powell now appeals.
DISCUSSION
¶11 To invoke the right to self-representation, a defendant must clearly and unequivocally inform the circuit court of the desire to forgo counsel and proceed pro se at trial. See State v. Egerson , 2018 WI App 49, ¶ 11, 383 Wis. 2d 718, 916 N.W.2d 833. In addition, a defendant seeking to invoke the right to self-representation must do so in a timely manner. Hamiel v. State , 92 Wis. 2d 656, 671-74, 285 N.W.2d 639 (1979). A clear, unequivocal and timely invocation of that right triggers a duty on the part of the circuit court to thoroughly examine the defendant to ascertain whether the defendant validly waives the right to counsel and is competent to proceed pro se. See Klessig , 211 Wis. 2d at 203.
¶12 Whether a defendant's request to represent himself or herself is a clear and unequivocal invocation of the right to self-representation is a question of law we review independently. See State v. Darby , 2009 WI App 50, ¶¶ 24-25, 317 Wis. 2d 478, 766 N.W.2d 770. A request for self-representation made on the morning of trial is addressed to the circuit court's sound discretion. See Hamiel , 92 Wis. 2d at 672-74.
¶13 Here, Powell made two requests for self-representation. We assume without deciding that the first request, made on the morning of the first trial, was clear and unequivocal. It led the circuit court to engage Powell in a Klessig colloquy. Although Powell's first request to represent himself was denied, the first trial ended in a mistrial. Powell received a new trial-which is the remedy for a denial of the right to self-representation. As a result, we review only Powell's second self-representation request.
¶14 The second request began as a plain request for substitute counsel: Powell said, "I want a new lawyer." Powell then listed a series of complaints about his lawyer's performance. Although Powell later asked to represent himself, he simultaneously reasserted his desire for substitute counsel-"I would rather represent myself or either get a new attorney." This request to proceed pro se was not clear and unequivocal because it was mixed with a request for substitute counsel. See Egerson , 383 Wis. 2d 718, ¶ 30.
¶15 Powell's next utterance-"What about representing myself?"-was likewise not an unequivocal invocation of the right to self-representation when viewed in context. It does not reflect a clear and deliberate choice to forgo counsel; rather, it was an impulse response to Powell's failed primary request for substitute counsel. See id. Thus, Powell's request was neither a clear nor unequivocal invocation of his right to represent himself and the circuit court properly denied it.
¶16 In addition, Powell's request for self-representation was untimely. Although the circuit court did not specifically address the issue of untimeliness below, and therefore did not set forth its reasoning regarding untimeliness, we may uphold the court's result if upon our independent review there are facts in the record to support the proper reasoning, even if the court gave no reason at all, or if the reasoning was not presented to the lower court. See State v. Holt , 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985). Here, we may uphold the denial of the request on timeliness grounds by applying the undisputed facts to Hamiel .
¶17 In Hamiel , the defendant requested an adjournment on the morning of trial before jury selection so that he could hire an attorney to replace his court-appointed attorney. Hamiel , 92 Wis. 2d at 657-58. When the circuit court denied this request, the defendant asked to represent himself. The court also denied this request and explained:
I think that the timing of that request is not proper on the morning of trial with the jury sitting in, the jury panel sitting in the courtroom[,] to ask to defend yourself. I think it puts an unreasonable burden on the court and on the prosecutor, particularly when [the court-appointed attorney] has been with this case from its inception and has prepared and is prepared to proceed this morning.
Id. at 658.
¶18 The defendant claimed on appeal that the circuit court's ruling violated his right to self-representation, but our supreme court concluded "[l]ast minute changes of counsel can have a significantly adverse effect on the judicial system." Id. at 673. The court further stated, "The same considerations in avoiding obstruction to the orderly administration of justice apply when the right involved is that of self-representation." Id. The court explained that the defendant offered no reason for the untimeliness of his requests for substitute counsel and to represent himself. Id. at 674. Thus, "under the circumstances of this case, it is apparent that the primary objective of the defendant's motions was a further delay of the trial." Id. The court therefore concluded the circuit court had properly exercised its discretion by denying the eleventh-hour request for self-representation.
¶19 The foregoing analysis applies with equal force to Powell's request. Powell asked to represent himself on the morning of trial before jury selection. Powell's attorney had represented him at the first trial, and Powell could have informed the court that he wished to represent himself in the retrial at any time in the month between the two proceedings. Instead, Powell waited until the morning of the retrial and failed to account for the delay in making his request.
¶20 Powell insists Hamiel is distinguishable because the defendant in that case requested an adjournment of the trial whereas Powell did not. This is a distinction without a difference. We are also unpersuaded by the assertion in the reply brief that "Powell was prepared to proceed [pro se with trial as scheduled]." Given the complexity of the case and the potential punishment, Powell's last-minute request on the morning of trial to proceed without his attorney would likely have necessitated an adjournment to allow Powell time to prepare. See id. at 674. The court indicated an unwillingness to adjourn the proceedings, noting Powell's trial counsel "is prepared to proceed today, so we will proceed." As a result, it properly exercised its discretion in denying Powell's morning-of-trial request for self-representation as untimely.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).