# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP903-CR**

Cir. Ct. No. 2020CF163

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

NYROBI WILLIAM ALLEN,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. Nyrobi William Allen appeals from the judgment of conviction, entered upon a jury's verdict, for several offenses including three counts of attempted first-degree intentional homicide, two counts of first-degree reckless injury with use of a dangerous weapon, and armed robbery. Allen argues that the circuit court failed to consider his motion for self-representation in a timely manner, declined to strike for cause two objectively biased jurors, and incorrectly calculated the restitution order. For the reasons stated below, we reject Allen's arguments and affirm.

## BACKGROUND

¶2 Allen's charges arose from a home invasion in Milwaukee in December 2019. According to the criminal complaint, Allen entered the dwelling of A.B. and C.D., demanding money.[1] He began stabbing them with a butcher knife and A.B. rolled on top of C.D. to protect her unborn child—C.D. was near the end of her pregnancy. After causing great bodily harm to both A.B. and C.D., Allen eventually fled with A.B.'s backpack, which contained personal items of value.

¶3 During a pretrial hearing on April 20, 2021, Allen and his counsel informed the circuit court that he wanted to represent himself; however, the court decided to address the request at a later date. The trial proceeded and a jury was selected without the court addressing Allen's self-representation request. After a death in counsel's family, the defense moved for an adjournment, which Allen agreed to on the record.

---

[1] To protect the identity of the victims, we have substituted initials that do not correspond to their real names. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

¶4    The case again proceeded to trial in July 2021.  During voir dire, the defense argued that two potential jurors should be struck for cause for objective bias after they each stated they would give more weight to the testimony of a police officer because the person was a police officer.  When the court did not agree, the defense elected to use peremptory strikes to remove them from the final jury panel.[2]

¶5    On the fourth day of trial, Allen informed the circuit court that he wanted trial counsel off the case because he was not being helpful.  When Allen expressed wanting to bring in new counsel, the circuit court considered his request to have been made too late in the trial, but stated that Allen could represent himself.  After some consideration, Allen told the court he wanted trial counsel to continue representing him.

¶6    The jury found Allen guilty of all six charged offenses:  two counts of attempted first-degree intentional homicide for victims A.B. and C.D.; one count of attempted first-degree intentional homicide of an unborn child; two counts of first-degree reckless injury by using a dangerous weapon for victims A.B. and C.D.; and armed robbery.  The circuit court imposed a global sentence of fifty-five years of imprisonment, bifurcated as forty years of initial confinement and fifteen years of extended supervision, to be served consecutively to a revocation sentence Allen was serving.  At a restitution hearing, the court ordered restitution in the amount of $5,245.50 to A.B., which included costs of relocation, and $28,800.50 to the Wisconsin Crime Victim Compensation Program.

---

[2] The Honorable Joseph R. Wall presided over Allen's trial and sentencing.  The Honorable Danielle L. Shelton presided over Allen's restitution hearing and determined the restitution order.  We refer to either judge as the circuit court.

¶7      This appeal follows.

## DISCUSSION

¶8      Allen argues that this court should reverse his conviction and remand for a new trial on three bases. First, he asserts that his Sixth Amendment right of self-representation was violated when the circuit court failed to timely address his request to represent himself. Second, he contends that the court erred when it denied his motion to strike two jurors for cause for objective bias. Third, he argues that the court erred when it calculated the restitution order. Upon review, we reject Allen's arguments.

### I.      Right to self-representation

¶9      Allen's first argument is that he clearly requested self-representation and the circuit court failed to address his request in a timely manner. He contends this violated his constitutional rights.

¶10      Defendants have the right to conduct their own defense. U.S. CONST. amend. VI; WIS. CONST. art. I, § 7. "[A] defendant must clearly and unequivocally declare a desire to represent himself or herself in order to invoke that right[.]" *State v. Darby*, 2009 WI App 50, ¶1, 317 Wis. 2d 478, 766 N.W.2d 770. Whether a defendant's "constitutional right to self-representation was violated presents a question of law" that we independently review. *Id.*, ¶13.

¶11      Allen argues that his constitutional rights were violated when the circuit court did not engage in the *Klessig* colloquy required to determine if he was

waiving the Sixth Amendment right to counsel.[3] ***State v. Klessig***, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997). We reject Allen's framing of this issue. There "is no duty on the part of the [circuit] court to advise a defendant regarding his or her right to self-representation (i.e., perform the ***Klessig*** colloquy) if that defendant has not clearly and unequivocally invoked that right." ***State v. Egerson***, 2018 WI App 49, ¶18, 383 Wis. 2d 718, 916 N.W.2d 833. Therefore our question is whether Allen made a clear and unequivocal request for self-representation.

¶12 We return to the record. At the April 20, 2021 hearing, Allen and the circuit court had the following exchange after reviewing motions in limine and discovery:

> [ALLEN]: Man, right now I don't even want no attorney. I don't want no attorney because ya all coming up with discovery and I haven't seen nothing. So I don't even want no attorney right, now, you know what I am saying? I would rather take a chance doing myself. Furthermore, I don't even want [trial counsel] in my case no more.
>
> THE COURT: Okay. We can talk about that Monday morning, you can think about that.

¶13 At the April 23, 2021 pretrial hearing, Allen again expressed extreme frustration about not being able to see discovery from jail and that "you get upset with me when I say I don't want to have the attorney on my docket no

---

[3] When faced with a defendant requesting self-representation, the circuit court must engage in what is referred to as the ***Klessig*** colloquy to prove a valid waiver of the Sixth Amendment right to counsel. ***State v. Klessig***, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997). The court must ensure that the defendant has "(1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges … and (4) was aware of the general range of penalties" that could be imposed. ***Id.***

more." Later in that hearing, trial counsel reminded the court about Allen's request:

> [TRIAL COUNSEL:] …. When we were last in court, Mr. Allen indicated that he had a desire to represent himself in this case. I don't know if he was being serious when he said that, but I think—
>
> [ALLEN:] I definitely was.
>
> [TRIAL COUNSEL:] We need to address that issue to make sure the record is clear.
>
> [ALLEN:] I definitely was serious about that because like I said—
>
> THE COURT: We'll address that Monday morning. There's a lot—there's a number of questions I have to go through with you if you're serious about that. And if you are serious about it, I would likely appoint [trial counsel] as your standby attorney to give you any assistance that you want, but you need to think about that decision over the weekend and we'll talk about that Monday.

¶14 However, the circuit court never addressed Allen's request because the defense moved for an adjournment before the jury was sworn in due to a death in trial counsel's family. Allen did not express a desire for self-representation when the adjournment was discussed and instead agreed to the adjournment.

¶15 The trial began on July 6, 2021; Allen raised concerns about his representation only after the State had presented its case for three days. On July 9, 2021, Allen informed the circuit court he would like trial counsel "off my case … because we're not seeing eye to eye." Allen stated that he wanted the necessary paperwork to "find somebody to carry on for me because [trial counsel is] not helping me at all." Trial counsel asked to clarify if Allen wanted to proceed with self-representation. The circuit court reviewed the remaining legal matters in the trial, but told Allen it was "impossible" to bring in another attorney at this point.

The court offered Allen the opportunity to have a private conversation with trial counsel. Allen refused and stated the case should proceed with trial counsel as his representation. The circuit court questioned and confirmed that Allen wished to proceed with counsel, and then the trial continued.

¶16 An assertion of the right to self-representation must be made unequivocally and as an explicit choice. *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). Here, Allen did not make an explicit choice. During the April court appearances, Allen's statements showed frustration with his access to discovery and trial counsel—not a clear and unequivocal desire to represent himself. The State argues Allen's statements during the pretrial hearings were "expressions of dissatisfaction" with trial counsel, and not a clear request to represent himself. *Darby*, 317 Wis. 2d 478, ¶26. Further, Allen agreed to adjourn the trial without renewing a request for self-representation.

¶17 During the July trial, Allen waited until the fourth day to voice a desire to replace trial counsel and only considered self-representation when the court found it impossible to replace counsel in the middle of trial. The State contends that Allen's request on the fourth day of trial is not a request to represent himself, but a "request for another attorney," which is also not a clear and unequivocal request for self-representation. *Id.* When trial counsel acted as Allen's advocate and ensured his request for self-representation was recognized, the circuit court gave Allen an opportunity to discuss the matter privately with counsel. However, Allen refused this conversation and withdrew his request.

¶18 We conclude there was no violation. Allen was "disgruntled with his attorney" but when given the opportunity to clearly state his desire to represent

himself, he withdrew his request. *Egerson*, 383 Wis. 2d 718, ¶30. This claim fails.

## II. *Objective juror bias*

¶19 Allen's second argument is that the circuit court did not strike for cause two jurors who expressed that they would consider police testimony more credible than lay witness testimony. Instead, Allen asserts he was forced to exercise two peremptory strikes to remove those jurors. Allen argues that the jurors showed objective bias, but the State contends that if bias was shown, it should be considered subjective.

¶20 A defendant has a constitutional right to an unbiased jury. *See State v. Brunette*, 220 Wis. 2d 431, 439, 583 N.W.2d 174 (Ct. App. 1998). "If a juror is not indifferent in the case, the juror shall be excused. Any party objecting for cause to a juror may introduce evidence in support of the objection." WIS. STAT. § 805.08(1) (2021-22).[4]

¶21 Wisconsin recognizes three types of juror bias: statutory, subjective, and objective. *State v. Faucher*, 227 Wis. 2d 700, 716, 596 N.W.2d 770 (1999).[5] Subjective bias "describe[s] bias that is revealed through the words and the demeanor of the prospective juror." *Id.* at 717. This type of bias is "revealed by

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[5] By statute, a juror is considered biased when "the juror is related by blood, marriage or adoption to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case." WIS. STAT. § 805.08(1). A statutorily biased juror "may not serve on a jury regardless of his or her ability to be impartial." *State v. Faucher*, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999). Statutory bias is not alleged or at issue in this matter.

the prospective juror on voir dire: it refers to the prospective juror's state of mind." *Id.* In considering demeanor, "the circuit court's assessment will often rest on its analysis of the juror's honesty and credibility." *State v. Funk*, 2011 WI 62, ¶37, 335 Wis. 2d 369, 799 N.W.2d 421.

¶22 An objective bias analysis is an inquiry "not upon the individual prospective juror's state of mind, but rather upon whether the reasonable person in the individual prospective juror's position could be impartial." *Faucher*, 227 Wis. 2d at 718. The circuit court focuses an assessment of objective bias "on the reasonable person in light of [the] facts and circumstances" of the case. *Id.* at 719.

¶23 We return to the record. When asked if a juror would give more weight to the testimony of a police officer simply because the person was a police officer, Juror No. 12 said, "Absolutely," and that he would give "slightly less" weight to a citizen witness. Juror No. 30 said he would "give more weight to police officers' testimony" and that the police had "years of training and experience[.]" Allen argues these statements show bias. The State contends that both jurors were rehabilitated with additional questioning by the State. When asked if they would be able to assess the credibility of a police officer fairly and on the basis of evidence brought to trial, both jurors responded, "Yes."

¶24 However, even if we assume that Allen made a showing of bias by Juror Nos. 12 and 30, we conclude that any error was harmless. A claim of juror bias is assessed under the harmless error statute. *State v. Lindell*, 2001 WI 108, ¶111, 245 Wis. 2d 689, 629 N.W.2d 223; WIS. STAT. § 805.18(2). This statute provides that "[n]o judgment shall be reversed or set aside or new trial granted … on the ground of selection or misdirection of the jury" unless the error "affected the substantial rights" of the defendant. Sec. 805.18(2).

9

¶25     Generally, defendants must show prejudice to prove that an error affected their substantial rights. *See Weborg v. Jenny*, 2012 WI 67, ¶68, 341 Wis. 2d 668, 816 N.W.2d 191 (discussing that affecting substantial right arises from a reasonable probability that the error contributed to the outcome of the proceeding).  As our supreme court explained, "[a]n error assigned to a refusal to discharge a juror on challenge for cause cannot serve for reversal, since no prejudice resulted to appellants.  The juror was removed on peremptory challenge, and no objection was made to the jury as finally impaneled."  *Bergman v. Hendrickson*, 106 Wis. 434, 438-39, 82 N.W. 304 (1900).  Here, Allen exercised his peremptory strikes, ensuring that the jurors were not seated on the panel and did not participate in the jury verdict.  Allen acted "with a principal reason for peremptories:  to help secure the constitutional guarantee of trial by an impartial jury."  *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000).  We discern no prejudice.

¶26     Further, it is not reversible error for the circuit court to "overrule a challenge for cause, unless it is shown that an objectionable juror was forced upon the party, and sat upon the case after such party had exhausted his [or her] peremptory challenges."  *Pool v. Milwaukee Mechanics' Ins. Co.*, 94 Wis. 447, 453, 69 N.W. 65 (1896).  Although Allen refers to his peremptory strikes as "precious," he has not developed an argument that he was harmed or forced to "exhaust all his peremptory challenges[.]"  *Id.*  We decline to develop an argument for him.  *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) ("We cannot serve as both advocate and judge.").

### III.   Restitution order

¶27   Allen's final argument is that the circuit court erred when it included the victims' relocation expenses in the restitution order.  He contends that the victims did not establish a causal nexus between the offense and the restitution damages.

¶28   When imposing a sentence for any crime, the circuit court "shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing … unless the court finds substantial reason not to do so and states the reason on the record."  WIS. STAT. § 973.20(1r). "Before restitution can be ordered, a causal nexus must be established between the 'crime considered at sentencing,' § 973.20(2), and the disputed damage."  *State v. Canady*, 2000 WI App 87, ¶9, 234 Wis. 2d 261, 610 N.W.2d 147.  The crime considered at sentencing is interpreted broadly, encompassing "all facts and reasonable inferences concerning the defendant's activity related to the 'crime' for which the defendant was convicted, not just those facts necessary to support the elements of the specific charge of which the defendant was convicted."  *State v. Wiskerchen*, 2019 WI 1, ¶25, 385 Wis. 2d 120, 921 N.W.2d 730 (citations omitted).  The victim has the burden of proving the value of losses sustained as a result of a crime considered at sentencing.  Sec. 973.20(14)(a).

¶29   Restitution is ordered at the discretion of the circuit court. *Wiskerchen*, 385 Wis. 2d 120, ¶18.  A circuit court properly exercises its discretion when it considers the relevant facts under the applicable standard of law and reaches a decision that a reasonable court could reach.  *Canady*, 234 Wis. 2d 261, ¶6.  We search the record for reasons to uphold the circuit court's discretionary decision.  *Wiskerchen*, 385 Wis. 2d 120, ¶18.

¶30    The record reflects that A.B. testified at the restitution hearing that after she and C.D. were released from the hospital, they "decided not to go back to the house" and therefore incurred hotel expenses.[6]  She testified that when they relocated out of town, they had to hire movers to pack and move their belongings because they could not do it themselves.  During cross-examination, A.B. testified that it was not possible for them "mentally" to return to the house and it was not physically possible immediately after the crime.  When questioned about the physical possibility of living there, A.B. testified:

> A man broke into our house, and we have no idea how he got in.  How could you feel safe in your home if a man got into your house, and you have absolutely no idea how he got in?  It isn't possible to live in a position like that.

¶31    Allen argues that A.B. failed to meet her burden to prove that the residence was substantially damaged and unlivable due to the crime; that she failed to present a psychological or medical professional who could testify that the victims had to move for psychological or medical reasons; that the moving expenses were entirely voluntary and not supported by testimony or evidence; and that A.B.'s fear that Allen would return and endanger her safety was foreclosed by him being sentenced to forty years of confinement in his term of imprisonment. We reject Allen's arguments.  Expert testimony on psychological health or physical impossibility of habitability was not required.  A.B.'s testimony was sufficient to establish a factual basis for the expenses included in the restitution order.

---

[6] We note that while only A.B. testified at the restitution hearing, the expenses incurred appeared to cover both A.B. and C.D.'s costs.  We refer to both victims for ease of reading.

¶32     We begin with whether there is a sufficient causal nexus between the crime—the brutal home invasion, and the damages—relocation expenses. "In proving causation, a victim must show that the defendant's criminal activity was a 'substantial factor' in causing damage." *Canady*, 234 Wis. 2d 261, ¶9. The record reflects that the victims experienced a violent and traumatic event in their home when Allen broke in late at night and began stabbing them in their bed and threatening to kill their unborn baby. We conclude that Allen was a substantial factor because he was the only actor in this crime, and these costs were a "natural consequence" of the home invasion. *Id.* We conclude a sufficient causal nexus has been established.

¶33     Next, we turn to the question of whether relocation expenses can be considered damages under the restitution statute. The circuit court reviewed the restitution statute and case law and concluded that the relocation expenses were "special damages" under WIS. STAT. § 973.20(5)(a).

¶34     WISCONSIN STAT. § 973.20(5)(a) provides that the defendant may be required to pay as restitution "all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." "The 'special damage' limitation within the restitution statutes restrains the [circuit] court from assessing damages intended to generally compensate the victim for damages such as pain and suffering, anguish or humiliation which are often experienced by crime victims." *State v. Behnke*, 203 Wis. 2d 43, 60, 553 N.W.2d 265 (Ct. App. 1996), *overruled on other grounds by State v. Johnson*, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174 (citation omitted). However, "[a]ny readily ascertainable pecuniary expenditure paid out

because of the crime is appropriate as special damages." ***State v. Holmgren***, 229 Wis. 2d 358, 365, 599 N.W.2d 876 (Ct. App. 1999).

¶35     ***Behnke*** provides an apt illustration of the determination of special damages.  In ***Behnke***, we upheld a restitution order for the cost of a new lock at the victim's residence, even though the underlying offense did not take place there.  ***Id.***, 203 Wis. 2d at 60.  The victim testified that "she bought the lock two months after the attack because Behnke knew where she lived" and she feared him escaping from custody.  ***Id.***  We upheld the circuit court's conclusions that "the need for a lock was a consequence of Behnke's acts" and thus the new lock was a special damage entitled to restitution.  ***Id.***

¶36     We conclude that the circuit court acted within its discretion when it concluded that the relocation expenses, including the hotel and movers, were special damages and were entitled to restitution.  A.B.'s testimony established that it was physically impossible for them to return to the house immediately after their releases from the hospital due to the conditions of the property after the crime.  Her testimony then established it was psychologically harmful for them to return to the house where they had been attacked due to fear and trauma.  A.B.'s testimony supports that this "specific expenditure" was incurred because of the crime.  ***Id.*** at 61.  A.B.'s claim was a "readily ascertainable pecuniary loss" and thus a "special damage" for which restitution is appropriate by statute.  ***Id.*** at 60-61.

¶37     The record reflects that the relocation expenses were not offered as general compensation for the trauma of the crime, but to compensate the victims for specific expenses incurred when it was not possible to live in their house after the crime for physical and psychological reasons.  The relocation expenses were

14

special damages. A.B. satisfied her burden to prove her damages. WIS. STAT. § 973.20(14)(a).

¶38 We conclude that the circuit court considered the relevant facts in the record under the applicable standard of law and reached a rational decision that a reasonable court could reach. *Canady*, 234 Wis. 2d 261, ¶6. We therefore sustain the circuit court's restitution order.

## CONCLUSION

¶39 For the reasons stated above, we affirm Allen's judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.